Jana G. KRESOCK, Plaintiff–Appellee,

v.

BANKERS TRUST COMPANY, a foreign banking corporation licensed to operate a representative office in Illinois, Defendant–Appellant.

No. 93–3293.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1994.

Decided April 7, 1994.

Stephen B. Diamond and Andrew H. Haber (argued), Beeler, Schad & Diamond, Chicago, IL, for plaintiff-appellee.

Victoria D. Stratman, David L. Herron (argued), O'Melveny & Myers, Los Angeles, CA, and Marc R. Jacobs and Elaine S. Fox, D'Ancona & Pflaum, Chicago, IL, for defendant-appellant.

Before BAUER, FLAUM, and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

Jana G. Kresock sued the Bankers Trust Company for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Bankers Trust asked the district court to order Kresock to submit to arbitration. The district court denied Bankers Trust motion to compel arbitration. Bankers Trust appeals. We affirm.

## I.

Three corporations are relevant to this lawsuit. Only one of the three ever employed Kresock. (1) Bankers Trust New York Corporation wholly owns two subsidiaries that factor into this case—(2) Bankers Trust and (3) BT Securities Corporation. Bankers Trust is a foreign banking corporation licensed to operate a representative office in Illinois. BT Securities is a member of the National Association of Securities Dealers ("NASD") and it provides a variety of investment and financial advice to its clients. Kresock worked only for Bankers Trust. She never worked for Bankers Trust New York or BT Securities.

In the fall of 1989, Bankers Trust required Kresock to take the Series 7 general securities registered representative examination. Administered by the NASD, that test, if passed, qualifies a person to sell securities. The plan was for Kresock to pass the Series 7 so that she might be able to transfer to BT Securities at some later date. On October 16, 1989, in preparation for the Series 7, Kresock signed something called the "Form U–4—Uniform Application for Securities Industry Registration or Transfer." The Form U–4 contains an arbitration clause that provides as follows:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time.

Ex. A. to R. Doc. 19. Item 10 indicates that Kresock is "to be registered" with the NASD. *Id.* The Form U–4 identifies BT Securities as Kresock's "firm" and indicates that her employment from January of 1982 to the present was with Bankers Trust.

Kresock passed the Series 7, but never worked for BT Securities. As an employee of Bankers Trust, she made sure not to engage in any business that involved the type of work performed by BT Securities. To this end, Kresock never participated in any transactions involving the buying or selling of securities or the underwriting or distributing of issues of securities. In fact, no one ever consulted with her about working at BT Securities, nor was the subject of the Series 7 exam, the NASD registration, or BT Securities ever raised by anyone from the time Kresock took and passed the Series 7 exam until after the commencement of this lawsuit. Kresock continued working for Bankers Trust until March 1991, when Bankers Trust fired her. On December 8, 1992, Kresock filed her complaint against Bankers Trust for gender and pregnancy discrimination in violation of Title VII. Bankers Trust answered Kresock's complaint, then discovered Kresock's Form U–4. Bankers Trust played the Form U–4 as its trump card, amended its answer to Kresock's complaint, and affirmatively raised Kresock's agreement to arbitrate as a defense to her lawsuit.

Kresock refused to consent to arbitration. Bankers Trust responded by filing a motion to compel arbitration with the district court. The district court denied the motion to compel.

## II.

We review *de novo* the district court's denial of Bankers Trust's motion to compel

arbitration. *Britton v. Co-op Banking Group,* 4 F.3d 742, 744 (9th Cir.1993); *Luckie v. Smith Barney,* 999 F.2d 509, 512 (11th Cir.1993).

Bankers Trust asks us to reverse the district court's decision and order Kresock to submit her employment discrimination claim to arbitration. There are a couple of problems with Bankers Trust's position. To begin with, Bankers Trust is not a member of the NASD, a person associated with a member of the NASD, a public customer, or an "other." Those are the categories of persons listed by section 1 of the NASD's Code of Arbitration Procedure, which lists the type of persons that are eligible to have their disputes submitted to arbitration. *See Farrand v. Lutheran Bhd.,* 993 F.2d 1253, 1255 (7th Cir.1993) (noting that the term "other" in section 1 of the Code refers perhaps to clients, or parties similar to pendent parties who are added to the arbitration of a dispute between a member and a public customer). Moreover, even if Bankers Trust were closely enough allied with BT Securities, or were itself a member, person associated with a member, a public customer, or an other, Bankers Trust still would not succeed. The reason is simple: Kresock did not agree to arbitrate her employment discrimination claim with Bankers Trust, BT Securities, or anybody else when she signed the Form U–4.

■ On this point, we begin with a few of the basic principles that govern arbitration. An agreement to arbitrate is treated like any other contract. 9 U.S.C. § 2. Whether, then, a particular dispute is subject to arbitration is a matter of contract interpretation. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). A party, like Kresock, cannot be required to submit to arbitration any dispute which she has not agreed to submit. *Id.; International Bhd. of Teamsters v. Logistics Support Group,* 999 F.2d 227, 228 (7th Cir.1993). Finally, courts decide as a matter of law whether, in a particular case, the reluctant party agreed to arbitrate. *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418–19; *R.J. Distributing Co. v. Teamsters,*

*Chauffeurs & Helpers,* 771 F.2d 211, 214 (7th Cir.1985).

■ The arbitration contract at issue in this case is the Form U–4. We consider that document to determine if Kresock agreed to arbitrate her employment discrimination claim when she signed the form. As noted above, the Form U–4 indicates Kresock's agreement with BT Securities (not Bankers Trust) to arbitrate "any dispute, claim or controversy ... that is required to be arbitrated under the rules" of the NASD. Ex. A. to R. Doc. 19. The issue thus becomes whether the NASD's rules—its Code of Arbitration Procedure—require Kresock to arbitrate her pregnancy discrimination suit.

Until very recently, that Code did not require arbitration of employment discrimination suits. *Farrand,* 993 F.2d at 1255. In December 1992, the NASD proposed to amend its Code to require arbitration of any dispute "arising out of the employment or termination of employment of associated person(s)." 58 Fed.Reg. 39,070 (1993). A simultaneous proposed amendment to section 9 of the Code provided that disputes which concern employment-related contracts, promissory notes, and commissions would be heard by a panel of securities specialists. Other employment disputes would be resolved by panels with a majority of arbitrators who are from outside the securities industry. The Securities and Exchange Commission ("SEC") approved the proposed amendments by order of August 31, 1993 and made the proposed amendments effective as of October 1, 1993. 58 Fed.Reg. 45, 932–33 (1993). The SEC noted that the rule change was prompted by an unpublished decision by the California Court of Appeals which held that the NASD's Code of Arbitration Procedure did not cover employment disputes. The SEC also observed that our *Farrand* decision held that the NASD's Code as drafted did not require the arbitration of employment disputes. 58 Fed.Reg. 45,933 (1993).

In our order that denied a petition for rehearing, we noted in *Farrand* that the proposed amendments to the NASD's Code were more than mere clarifications. 993 F.2d at 1256. The amendments are structural changes in the Code that sweep into the

realm of arbitration a whole new class of disputes. If the amendments were to apply retroactively to Kresock's pregnancy discrimination dispute, she might have to arbitrate her dispute.

Courts, however, will not presume retroaction because it is unfair to hold private parties accountable for rules which were not in effect at the time their relevant conduct took place. *Mojica v. Gannett Co.*, 7 F.3d 552, 558 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994); *Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929, 936 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 207 (1992). To apply retroactively, such changes must explicitly indicate that they apply retroactively. *Diaz v. Shallbetter,* 984 F.2d 850, 852 (7th Cir.1993).

Here, the amendments to the NASD's Code say nothing about retroactive application. Indeed, the SEC's order indicates that they are not to be effective until October 1, 1993, four years after Kresock signed the Form U–4, more than two years after Bankers Trust fired her, and nearly a year after Kresock filed this lawsuit. Thus, the relevant conduct took place long before these amendments to the NASD's Code of Arbitration Procedure became effective. They do not apply retroactively to Kresock's case.

Bankers Trust counters by pointing to that portion of the Form U–4 which provides that Kresock agrees to be bound by the NASD's Code as it is "or may be ... amended from time to time." Ex. A. to R. Doc. 19. Certainly, Kresock agreed to be bound by amendments to the NASD's Code, but she never agreed to the retroactive application of such amendments, particularly when the amendments themselves do not purport to apply retroactively. It would be absurd to apply these amendments to Kresock's case. The incentive created by such a result would be this: after commencement of litigation, an organization such as the NASD could simply amend its rules to force one or both parties to do something (like arbitrate) that one or both never agreed to do. Such a situation is unacceptable.

Kresock never agreed to arbitrate her employment discrimination suit with Bankers Trust. The district court's decision to deny Bankers Trust's motion to compel arbitration is therefore

AFFIRMED.