**Vito VITONE, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY and John Does 1–5, Defendants.**

**C.A. No. 95–0367L.**

United States District Court, D. Rhode Island.

Oct. 17, 1996.

John A. Tarantino, Adler, Pollock & Sheehan, Inc., Providence, RI, for Plaintiff.

Matthew F. Medeiros, Flanders & Medeiros, Providence, RI, Claire P. Gutekunst, Michael H. Roffer, David Goldblatt, Nancy Kilson, Allen I. Fagin, Proskauer, Rose, Goetz & Mendelsohn, New York City, for Defendants.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This case involves a dispute arising out of the employment relationship between plaintiff Vito Vitone and Metropolitan Life Insurance Company ("Metlife"). The matter is presently before the Court on a motion by

194

defendant Metlife to compel arbitration of the dispute and stay the action until the completion of any such arbitration. For the reasons that follow, that motion is granted. In addition, after finding that plaintiff has no standing to bring federal and state RICO claims, the Court dismisses those claims *sua sponte*.

## I. Background

The following facts are not in dispute, unless otherwise noted. Plaintiff joined Metlife in October 1969, serving as Sales Representative, Sales Manager, District Sales Manager, Regional Sales Manager, Director of Overseas Operations, and Regional Executive at various points during his tenure. Most of the conduct that gives rise to the present dispute took place from May 1988 to July 1994, during which time plaintiff served as Metlife's Director of Overseas Operations.

The relationship between plaintiff and Metlife came to an end on October 28, 1994.[1] In July 1995, plaintiff filed the present lawsuit against Metlife and five unnamed employees, officers, and agents of Metlife (John Does 1–5) challenging the propriety of that termination and related conduct. Plaintiff contends that Metlife terminated him in retaliation for his complaints to Metlife's auditors, management, and Legal Department about compliance irregularities in the company's operations, and for his intention to report these irregularities to the appropriate state and federal regulatory authorities. Plaintiff asserts that such a termination violates the Rhode Island Whistleblowers' Protection Act.[2]

Further, plaintiff's complaint asserts claims for intentional and negligent misrepresentation, defamation/false light invasion of privacy, and federal and Rhode Island civil RICO recovery.[3] These claims present more general challenges to Metlife's conduct vis-a-vis plaintiff during the term of his employment. Specifically, plaintiff contends that he was induced to accept the Director of Overseas Operations position when he received assurances that Metlife's operations were in compliance with applicable regulatory protocols.[4] In addition, plaintiff asserts that he was made a scapegoat in Metlife's attempts to cover-up the alleged improprieties, and that statements were made by Metlife and John Does 1–5 regarding plaintiff's "poor business judgment" that damaged his future employment prospects. Finally, plaintiff claims that he was "injured in his business or property" by reason of Metlife's alleged criminal RICO violations.

Of relevance to this dispute is an arbitration agreement executed in the course of plaintiff's employment with Metlife. In 1986, plaintiff registered with the National Association of Securities Dealers, Inc. ("NASD"), of which Metlife is a member. As part of his NASD application, plaintiff completed a Uniform Application for Securities Industry Registration or Transfer, known as a "Form U-4." Paragraph 5 of the Form U-4 contains the following arbitration clause:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10 as may be amended from time to time.[5]

Thus, plaintiff agreed to submit disputes to arbitration as required by NASD rules and

1. According to the allegations in the complaint, in an October 1994 meeting plaintiff was informed that he could either accept a demotion to a sales position or face termination. Plaintiff characterizes this communication as a constructive termination, while Metlife claims that plaintiff chose to end the relationship voluntarily.

2. The specific sections on which plaintiff bases this claim, R.I.Gen.Laws § 36–15–1 *et seq.* (1990), were repealed effective July 5, 1995; these were replaced with similar provisions at R.I.Gen.Laws § 28–50–1 *et seq.* (1995). In addition, plaintiff challenges his termination as a

breach of his employment agreement with Metlife.

3. 18 U.S.C. § 1964(c) (1994); R.I.Gen.Laws § 7–15–4(c) (1992).

4. Plaintiff also asserts that this conduct amounts to obtaining plaintiff's services by false pretenses, a criminal violation for which R.I.Gen.Laws § 9–1–2 (1985) provides a civil recovery.

5. The NASD was the only organization listed in Item 10 of plaintiff's Form U-4 and Metlife was listed as plaintiff's "firm."

By–Laws; for all matters relevant to this litigation, the applicable regulations are provided by the NASD Code of Arbitration Procedures ("NASD Code").

At issue here is the extent to which the NASD Code compels arbitration of the present dispute. This question is complicated by the fact that the NASD Code was amended, effective October 1, 1993, in a manner that directly bears on this issue: language was added to the NASD Code to bring matters "arising out of the employment or termination of employment of associated person(s)" specifically within the scope of arbitrable matters.[6] The following are the relevant provisions of the NASD Code; the highlighted material was added by the 1993 amendments.

**Part I, Sec. 1.**

This Code of Arbitration Procedure is, prescribed ... for the arbitration of any dispute, claim or controversy arising out of or in connection with the business of any member of the Association, *or arising out of the employment or termination of employment of associated person(s) with any member*, with the exception of disputes involving the insurance business of any member which is also an insurance company:

(1) between or among members;

(2) *between or among members and associated persons;*

(3) between or among members *or associated persons* and public customers, or others; and

(4) between or among members, registered clearing agencies with which the Association has entered into an [arbitration] agreement....

**Part II, Sec. 8(a).**

Any dispute, claim, or controversy eligible for arbitration under Part I of this Code between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), *or aris-*

*ing out of the employment or termination of employment of such associated person(s) with such member*, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

Contending that the present dispute is within the scope of arbitrable matters under these provisions of the NASD Code, Metlife filed a motion to compel arbitration and to stay this action pending the completion of any court-ordered arbitration. After hearing arguments of counsel, the Court took the matter under advisement. The matter is now in order for decision.

## II. Discussion

The Court approaches the present matter with a healthy regard for the strong congressional and jurisprudential mandate favoring arbitration. Section 2 of the Federal Arbitration Act provides that written arbitration provisions within contracts involving commerce are valid and enforceable. 9 U.S.C. § 2 (1994). Section 3 of the same Act specifies that a court "shall ... stay the trial of the action until such arbitration has been had," if it finds that the subject matter of the litigation is within the scope of a particular arbitration agreement. 9 U.S.C. § 3 (1994). The Supreme Court has noted that this provision "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (emphasis in original). This "liberal federal policy favoring arbitration agreements" is so strong that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v.*

---

**6.** When plaintiff's application for NASD registration was accepted, he became an "associated person" under the meaning of the NASD Code.

*Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941; 74 L.Ed.2d 765 (1983).

In this light, the Court should have little difficulty finding that the present dispute is within the scope of arbitrable matters under the NASD Code, as amended in 1993. Indeed, the language of the NASD Code seems to give a fairly unambiguous answer to the question of arbitrability in this case. The dispute primarily concerns plaintiff's employment at and termination from Metlife. First, plaintiff's termination from Metlife is the springboard for the whistleblowing, breach of agreement, and civil RICO claims. Moreover, the misrepresentation, false pretenses, and defamation claims all stem from conduct that took place in the course of the employment relationship between plaintiff and Metlife. There would appear to be little need, therefore, to resort to a policy in favor of arbitration—the dispute clearly comes within the "arising out of the employment or termination" language of the NASD Code.

Faced with this conclusion, plaintiff advances two arguments to support his contention that the present dispute is not subject to arbitration under the NASD Code: (1) the 1993 amendments are inapplicable to this case, since plaintiff executed his Form U–4 prior to these amendments; and, (2) the insurance business exception of section 8 of the NASD Code applies to remove this dispute from arbitration. The Court considers each of these arguments in turn.

### A. Applicability of 1993 NASD Code Amendments

■ As set forth above, the 1993 amendments to the NASD Code added language to sections 1 and 8 which clearly indicates that employment and termination disputes fall within the scope of NASD arbitration. Plaintiff notes that at the time he executed his Form U–4 the NASD Code did not con-tain such language, and thus contends that the amendments should not be applied retroactively to bring the dispute between himself and Metlife within the scope of arbitrable matters.

The Court cannot agree with this contention. Under the terms of the Form U–4 signed by plaintiff, he was bound to accept and comply with any changes in NASD regulations, including changes in the NASD Code. Paragraph 2 of plaintiff's Form U–4 reads as follows:

> I hereby apply for registration with the organizations and states indicated in Item 10 as may be amended from time to time … and hereby certify that I agree to abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the states and organizations *as they are and may be adopted, changed or amended from time to time.* (emphasis added).

No matter how clever a grammatical argument plaintiff might offer,[7] the effect of this language is inescapable: amendments to the NASD Code are incorporated as part and parcel of plaintiff's agreement with his employer and NASD.

Nonetheless, plaintiff asserts that the amendments should not be applied retroactively to cover the present dispute. Plaintiff draws on the Seventh Circuit's decision in *Kresock v. Bankers Trust Co.*, 21 F.3d 176 (7th Cir.1994), for primary support. In *Kresock*, a Title VII employment discrimination case, the Court held that it would not apply the 1993 amendments retroactively where the "relevant conduct took place long before these amendments to the [NASD Code] became effective." *Id.* at 178–79. While the Court did not specifically state what the "rel-

---

**7.** Plaintiff argues that the "as amended" clause only modifies Item 10 of Form U–4—the list of organizations with which plaintiff has registered. Under this reading, plaintiff would be bound by the regulations of any additional organizations, but not new rules of organizations of which he is already a member. The argument is flawed in two respects: first, plaintiff focuses on the wrong paragraph of Form U–4 by discussing the "as amended" clause of paragraph 5 instead of para-graph 2. Even accepting plaintiff's argument regarding the construction of paragraph 5, this does not resolve the issue regarding the relevant section of Form U–4. Second, assuming plaintiff simply confused the paragraph numbers, the argument still fails. There are two "as amended" clauses in paragraph 2: one clearly refers to Item 10, while the second just as clearly refers to each organization's rules and regulations.

evant conduct" was, it did note all conduct that could possibly be relevant—the execution of Form U–4, the discharge, and the filing of the lawsuit—took place prior to the effective date of the amendments. *See id.* at 179. The Court stressed the undesirable incentives that an alternative holding would create: "after commencement of litigation, an organization such as the NASD could simply amend its rules to force one or both parties to do something (like arbitrate) that one or both never agreed to do. Such a situation is unacceptable." *Id.*

The district courts that have considered *Kresock* have concluded that the "relevant conduct" cited by the Seventh Circuit is the filing of the lawsuit. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 924 F.Supp. 627, 636–39 (D.N.J.1996); *Wojcik v. Aetna Life Ins. and Annuity Co. (Wojcik I),* 901 F.Supp. 1282, 1287–88 (N.D.Ill.1995). Focusing on the "incentives" rationale, those courts have concluded that *Kresock* was primarily concerned with preventing the application of the amendments to a dispute where a lawsuit has already been filed. Therefore, said courts have applied the 1993 amendments to claims filed after the effective date of the amendments, regardless of when the Form U–4 was executed. *See In re Prudential,* 924 F.Supp. at 638; *Wojcik I,* 901 F.Supp. at 1288–89; *see also Pitter v. Prudential Life Ins. Co. of Am.,* 906 F.Supp. 130, 134 (E.D.N.Y.1995) (also holding 1993 NASD Code amendments applicable to action filed after effective date of amendments).

Finding the reasoning of those cases persuasive, the Court agrees that the 1993 amendments to the NASD Code are applicable to claims filed after the effective date of the amendments, regardless of when the Form U–4 was executed. Such is the case here, as plaintiff filed his claim almost two years after the effective date of the amendments. When he filed this claim, plaintiff should have been fully aware of the set of rules governing his employment-related dispute; in such a case, the Court cannot conclude that Metlife (or NASD) unfairly changed the rules in the middle of the game. Therefore, the Court concludes that the 1993 NASD Code amendments are applicable to the present dispute. Indeed, the fact that most of the conduct complained of here also took place after the effective date of the amendments only bolsters the Court's conclusion. *See Wojcik v. Aetna Life Ins. and Annuities Co. (Wojcik II),* 916 F.Supp. 729, 730–31 (N.D.Ill.1996) (clarifying previous order to note that both filing date of claim and timing of actionable conduct was relevant to finding amendments applicable).

In passing, the Court notes that this dispute most likely would have been subject to arbitration even under the NASD Code as it read at the time plaintiff executed his Form U–4. The majority of the courts applying the pre-amendment NASD Code read the relevant provisions to include employment disputes as an arbitrable matter, even though such disputes were not explicitly referenced in the NASD Code.[8] *See, e.g., Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1486–88 (10th Cir.1994); *Kidd v. Equitable Life Assurance Soc'y of the United States,* 32 F.3d 516, 519–20 (11th Cir.1994); *Association of Inv. Brokers v. S.E.C.,* 676 F.2d 857, 861 (D.C.Cir.1982). The circuits are not united in this conclusion, however, as the Seventh Circuit has held that the pre-amendment NASD Code did not require arbitration of employment disputes.[9] *Farrand v. Lutheran Brotherhood,* 993 F.2d 1253, 1254–55 (7th Cir.1993). However, because the Court finds the 1993 amendments applicable to the present case, the resolution of this issue can await another day.[10]

---

8. The history of the amendments supports this position, as it suggests that the changes were intended only to clarify ambiguities in the NASD Code language, not to expand the scope of arbitrable matters. *See* 58 Fed.Reg. 39070, 39071 (1993) ("The NASD has taken the position that employment disputes are arbitrable under Section 8, but in order to clear up any ambiguity, it is proposing the changes.").

9. The Ninth Circuit, while not expressly deciding the matter, has also suggested its willingness to join the Seventh Circuit in this conclusion. *See Prudential Ins. Co. of Am. v. Lai,* 42 F.3d 1299, 1305 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995).

10. The Court does note, however, that the *Farrand* decision has been widely criticized. *See, e.g., Kidd,* 32 F.3d at 519 n. 6 (*Farrand* disregards Supreme Court's directive to resolve ambi-

## B. The Insurance Business Exception

Plaintiff's second argument against arbitration is that even under the 1993 amendments, the present dispute falls within the "insurance business" exception to arbitrability of the NASD Code. Part I, section 1 of the NASD Code excludes from arbitration disputes "involving the insurance business of any member which is also an insurance company." Plaintiff asserts that this case falls within the exception because: (1) the questions he raised with Metlife management, for which he was allegedly fired, concerned the company's insurance practices, and (2) the state and federal RICO claims detail improprieties in Metlife's insurance business practices.

■■■ The Court does not agree with plaintiff's conclusion. As discussed earlier, the main thrust of this claim is to challenge a negative employment decision and other conduct during the employment relationship, not to examine Metlife's insurance practices. In this case, the Court would only review Metlife's insurance practices to determine how such practices, and the alleged attempts to conceal these practices, might have affected plaintiff's employment conditions and resulted in his termination. As the weight of authority has concluded, such an indirect review of a company's insurance business, sounding in the context of an employment dispute, is not enough to invoke the exception. *See, e.g., Wojcik I,* 901 F.Supp. at 1291–92 (exception not applicable where claims arise from wrongful conduct directed at employee, not insurance aspect of employer's business); *Prudential Ins. Co. of Am. v. Shammas,* 865 F.Supp. 429, 432–33 (W.D.Mich.1993) (exception not applicable where employment discrimination and retaliation claims had nothing specifically to do with insurance business practices).

The Court takes note of a recent case invoking the insurance business exception, *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 924 F.Supp. 627 (D.N.J.1996). At issue there were claims "more intricately connected with the allegedly fraudulent and illegal character of Prudential's business practices than are claims in ordinary employment disputes." *Id.* at 640. Under such "unique circumstances", the fact-finder would have been required "to engage in the comprehensive evaluation of Prudential's insurance practices" in order to resolve the employment claims. *Id.* at 460–61. Because of this need to evaluate the defendant's business practices, the Court found that this was not a simple employment case, but instead a "dispute involving the insurance business" of defendant and thus outside the scope of NASD arbitration. *Id.* at 461–62.

According to the *In re Prudential* Court, the distinguishing feature of the case was the need to engage in a comprehensive review of the defendant's insurance business in order to resolve the employment claims. *Id.* Unlike *In re Prudential,* the *Wojcik* and *Shammas* claims did not require such a review, as the employment claims there could survive absent independent proof of a violation of insurance regulations. *See also Trumbetta v. Metropolitan Life Ins. Co.,* 1994 WL 481152, at *3 n. 3 (E.D.Pa. Sept. 1, 1994) ("[W]hether or not the defendants actually engaged in any unlawful insurance practices is irrelevant to this dispute.").

While the Court finds the reasoning of *In re Prudential* of academic interest, that does not change the outcome of the present case. No "comprehensive evaluation" of Metlife's insurance business will be required to resolve most of the claims at issue here, as plaintiff need not prove the illegality of Metlife's insurance practices in order to succeed. To wit, even if Metlife were to be cleared of all charges of impropriety in its insurance business, the main thrust of plaintiff's complaint—his retaliatory discharge claim—would survive that determination. The same holds true of plaintiff's other employment-related claims. Since no "comprehensive evaluation" of Metlife's insurance practices will be undertaken to resolve this case, the

guities in favor of arbitrability); *The 'Strappes Group, Inc. v. Siedle,* 1993 WL 443926, at *4 (D.Mass. Nov. 22, 1993) (*Farrand* creates "irrec-

oncilable conflict" between sections 1 and 8 of NASD Code).

business insurance exception is inapplicable to these claims.[11]

■ The RICO portion of plaintiff's claim does raise an issue under this analysis, however. The civil RICO claims may well require the fact-finder to engage in a plenary review of Metlife's insurance practices, because in order to make out a civil RICO claim, plaintiff must first show an underlying criminal RICO offense. *See Nodine v. Textron, Inc.*, 819 F.2d 347, 348–49 (1st Cir. 1987). In other words, in order to resolve plaintiff's RICO claims, the Court would have to review Metlife's insurance practices in detail to determine whether an underlying offense has occurred—the type of "comprehensive evaluation" envisioned by *In re Prudential*. Therefore, plaintiff's RICO claims will be analyzed now.

### The Civil RICO Claims

■ As noted above, civil RICO claims might in some instances trigger the insurance business exception of the NASD Code. The Court need not make such a determination in this case, however, because an examination of plaintiff's RICO claims reveals that he lacks standing to bring such claims on the facts as presented in the complaint. Accordingly, the Court will dismiss plaintiff's federal and state RICO claims *sua sponte*.

18 U.S.C. § 1964(c) provides a private cause of action for treble damages and attorneys' fees to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." As the First Circuit has recognized, recovery under this section requires: (1) injury to business or property; (2) a violation of § 1962; and (3) that the violation caused the injury. *See Nodine*, 819 F.2d at 348. The focus here is on the third prong of this test, causation.

The Supreme Court has framed the question of causation as one of standing: under § 1964(c), a plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). Thus, section 1964(c) provides no cause of action to individuals injured by acts other than criminal RICO violations. *See Nodine*, 819 F.2d at 349.

For his civil RICO claims, both state and federal, plaintiff asserts his termination and subsequent difficulty in finding employment as his injuries. Such injuries are considered injury to "business or property" under § 1964(c). *Id.* at 348. As for causation, plaintiff broadly claims that these injuries resulted from Metlife's RICO violations; the alleged indictable offenses are mail and wire fraud,[12] transportation of moneys taken by fraud,[13] and receipt of unlawfully taken money.[14]

A closer examination of the case, however, reveals that none of these alleged offenses could have caused plaintiff's injury. Plaintiff contends that he was terminated for reporting questionable practices to management, not because of the offenses themselves. Similarly, any damage to plaintiff's reputation and business prospects was caused by statements made by Metlife regarding his termination, not the alleged mail or wire fraud, or the receipt of unlawfully taken money. Because plaintiff was not "injured in his business or property by the conduct constituting the violation," he lacks standing to bring a civil RICO claim. *Compare Morast v. Lance*, 807 F.2d 926, 932–33 (11th Cir.1987) (employee terminated for reporting banking irregularities lacks standing under civil

---

11. The only employment-related claims that give the Court some pause under this analysis are the misrepresentation claims. There, plaintiff alleges that he took a different position at Metlife in reliance on allegedly untrue statements about the company's compliance with regulatory statutes. While this claim might require the fact-finder to ask some questions about Metlife's compliance, this would only necessitate a cursory review of such practices, not the "comprehensive evaluation" required in *In re Prudential*. Moreover, the misrepresentation claims present, at best, tan-

gential matters, as the heart of this dispute is plaintiff's termination. In light of the federal policy in favor of arbitration, it would be improper to allow such a tangential issue to prevent a predominantly "arbitrable" dispute from reaching arbitration.

12. 18 U.S.C. §§ 1341, 1343 (1994).

13. 18 U.S.C. § 2314 (1994).

14. 18 U.S.C. § 2315 (1994).

RICO because firing "did not flow directly from the predicate acts").

This conclusion is compelled by the First Circuit's decision in *Nodine,* which presented almost identical facts. In *Nodine,* the plaintiff discovered that his employer routinely violated Canadian customs laws and had engaged in various acts to cover up this conduct. *Nodine,* 819 F.2d at 347–48. When the plaintiff reported these violations to his superiors and then to the employer's legal department, he was discharged. *Id.* He then brought a civil RICO action under § 1964(c), alleging the predicate RICO offenses of mail and wire fraud, obstruction of justice, obstruction of a criminal investigation, and interference with commerce. *Id.* at 349. The First Circuit affirmed the dismissal of the complaint, finding that the injury, the discharge from employment, was caused by the employer's retaliation, not the predicate offenses. According to the Court: "Firing Nodine under these circumstances was wrong, but it did not violate the RICO Act." *Id.*

The same holds true in the present case, where plaintiff's injuries were caused by the Metlife's alleged conduct towards him, not the predicate RICO offenses. As the First Circuit stated in *Nodine,* such conduct might be "wrong"—indeed, it may be the basis for a successful whistleblowing claim. However, the conduct does not make out a RICO claim. Plaintiff was not injured by the conduct constituting the alleged RICO violation, and thus he lacks standing to bring such a claim.

■ This causation analysis applies with equal force to defeat plaintiff's claim under the state RICO statute. As with federal RICO, Rhode Island's RICO law provides civil recovery for any person "injured in his or her business or property by reason of" a

predicate criminal RICO offense. R.I.Gen. Laws § 7–15–4(c) (1992). This provision presents the same requirements as does its federal counterpart, and requires a similar analysis. *See Martin v. Fleet Nat'l Bank,* 676 F.Supp. 423, 432 (D.R.I.1987) (using same analysis for federal and state civil RICO claims). For the state claim, the predicate offenses alleged are obtaining money and plaintiff's services by false pretenses—a larceny.[15] The injuries alleged are the same as in the federal claim: plaintiff's termination and damage to his reputation and future business prospects. As with the federal claims, the injuries are unconnected to the alleged predicate criminal RICO offenses— the injuries flow from the termination and the "fallout" from that termination, not the alleged criminal conduct. Therefore, there is no standing to bring a Rhode Island RICO claim.

Because the injuries complained of do not flow from the alleged predicate RICO criminal offenses, the Court concludes that plaintiff lacks standing to bring these civil RICO claims. As it appears beyond doubt from the pleadings that plaintiff can prove no set of facts which would support a claim for civil RICO recovery, the Court dismisses plaintiff's RICO claims, under both federal and state law, *sua sponte.*

### C. Claims Against John Doe Defendants

■ Plaintiff's final argument opposing the motion to compel arbitration and stay the action concerns the claims against John Does 1–5.[16] Plaintiff suggests that because the John Doe defendants remain unidentified, the claims against them are not subject to arbitration under the NASD Code.[17]

The Court will not consider the arbitrability of the claims against John Does 1–5 at this

---

15. Under Rhode Island law, any person who "obtain[s] from another designedly, by any false pretense or pretenses, any money, goods, wares, or other property, with intent to cheat or defraud" is guilty of larceny. R.I.Gen.Laws § 11–41–4 (1994). Larceny is one of the offenses included as "racketeering activity" under the state RICO statute, R.I.Gen.Laws § 7–15–1(c) (1992).

16. Plaintiff raises this issue even though no motion has been made to compel the arbitration of

any of the claims against the John Doe defendants.

17. Plaintiff maintains that Part I, section 1 of the NASD Code only provides for arbitration of disputes "between or among members and associated persons." In brief, plaintiff contends that because the John Does are unidentified, they are not "associated persons" as to whom arbitration is required.

time. At present, the only matter before this Court is the dispute between plaintiff and Metlife, as Metlife was the only entity served as a defendant in this matter. The John Doe defendants are unidentified and unserved; therefore, they are not yet parties to the action. *See Nagle v. Lee,* 807 F.2d 435, 440 (5th Cir.1987) ("the mere naming of a person through use of a fictitious name does not make that person a party absent voluntary appearance or proper service of process."); *Hart v. Yamaha–Parts Distrib., Inc.,* 787 F.2d 1468, 1471 (11th Cir.1986) (defining party status to require either voluntary appearance or service); *In re Library Editions of Children's Books,* 299 F.Supp. 1139, 1142 (J.P.M.L.1969) (same); *see also* 67A C.J.S. Parties § 3 (1978). It would be improper for this Court to resolve issues concerning the arbitrability of claims against persons that are not yet part of this case.

If the identities of the John Doe defendants are discovered during the preparation for, or during the conduct of, the arbitration proceedings between plaintiff and Metlife, of course, they can be served. The Court will then entertain any motions concerning those claims. Until the John Does are served they are not parties to this case and any alleged claims against them will not be considered by the Court.

### III. Conclusion

For the foregoing reasons, the Court grants Metlife's motion to compel arbitration of the dispute between plaintiff and Metlife, pursuant to the written agreement of the parties. In addition, plaintiff's federal and state RICO claims are dismissed *sua sponte.* If plaintiff believes that he can show cause why the RICO counts should not be dismissed, he can file a motion for reconsideration with an accompanying memorandum within 20 days of the date hereof. If such a motion is filed, defendant will have 20 days to file an objection thereto with an accompanying memorandum. Then, the Court will set the matter down for hearing.

Accordingly, all further proceedings in this matter (except a motion for reconsideration) are stayed until the completion of arbitration,

as required by the Federal Arbitration Act, 9 U.S.C. § 3 (1994).

It is so ordered.