**Mona GIBSON, Plaintiff–Appellant,**

**v.**

**NEIGHBORHOOD HEALTH CLINICS, INC., Defendant–Appellee.**

No. 96–2652.

United States Court of Appeals,
Seventh Circuit.

Argued May 23, 1997.

Decided Aug. 21, 1997.

---

Cynthia Rockwell (argued), Haller & Colvin, Fort Wayne, IN, for Plaintiff–Appellant.

James P. Fenton (argued), Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, IN, for Defendant–Appellee.

Gwendolyn Young Reams, Paul Bogas (argued), Carolyn L. Wheeler, C. Gregory Stewart, Equal Employment Opportunity Commission, Office of General Counsel, Washington, DC, Amicus Curiae.

William J. Holloway, Michael J. Leech, Hinshaw & Culbertson, Chicago, IL, Amicus Curiae.

Before BAUER, CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Mona Gibson appeals the district court's dismissal of her claims under Title VII and the Americans with Disabilities Act ("ADA") against her former employer, Neighborhood Health Clinics ("NHC"). The district court dismissed Gibson's claims on the ground that she had contractually agreed to submit any claims against NHC to arbitration. We reverse and remand.

## I.

Gibson, who had previously been employed by NHC under circumstances not relevant to the instant case, was rehired by NHC on December 22, 1994. On December 30, 1994, at which time Gibson, although rehired, had not yet returned to work, NHC held a meeting at which all employees were presented with a new Associates Policy Manual (the "Manual"), and required to sign a new Associates Understanding (the "Understanding"). Gibson was not required to attend the meeting and in fact she did not. The Understanding included the following language:

> I agree to the grievance and arbitration provisions set forth in the Associates Policy Manual. I understand that I am waiving my right to a trial, including a jury trial, in state or federal court of the class of disputes specifically set forth in the grievance and arbitration provisions on pages 8–10 of the Manual.

The Manual states that when an employee alleges a violation of her rights under the ADA or Title VII (or other provisions not relevant here):

> **THEN IT IS CLEARLY INTENDED AND AGREED THAT THE SOLE AND EXCLUSIVE MEANS FOR THE RESOLUTION OF ALL DISPUTES, ISSUES, CONTROVERSIES, CLAIMS, CAUSES OF ACTION OR GRIEVANCES BY AN EMPLOYEE AGAINST NEIGHBORHOOD HEALTH CLINICS SHALL BE THROUGH THE PROCESS OF ARBITRATION AND PURSUANT TO ... THE INDIANA UNIFORM ARBITRATION ACT.**

(emphasis and capitalization in the original). The opening two paragraphs of the Manual include the following language:

> Neighborhood Health Clinics reserves the right at any time to modify, revoke, suspend, terminate, or change any or all terms of this Manual, plans, policies, or procedures, in whole or in part, without having to consult or reach agreement with anyone, at any time, with or without notice. . . .

> . . . [W]hile Neighborhood Health Clinics intends to abide by the policies and procedures described in this Manual, it does not constitute a contract nor promise of any kind. Therefore, employees can be terminated at any time, with or without notice, and with or without cause.

The arbitration provisions were not part of the terms of employment during Gibson's previous tenure with NHC.

When Gibson was hired in December 1994, she was informed that she should report to work on January 9, 1995. On that date, she met with NHC's personnel director, Chris Baxter, who handed Gibson a stack of papers to sign, including insurance and tax forms. Among the papers was the Understanding. Gibson testified at her deposition that when she asked Baxter about the Understanding, Baxter told her that it was a form that everybody signed so that complaints about time off could be settled through a grievance procedure. The Manual referenced in the Understanding was not given to Gibson at

that time; Baxter was only able to locate a copy of the Manual later that day, at which time she provided it to Gibson. Although she signed the Understanding, Gibson never signed the Manual.

NHC fired Gibson on April 6, 1995. On May 15, 1995, Gibson filed a discrimination claim with the Equal Employment Opportunity Commission, alleging sex and disability discrimination. NHC was informed of this charge shortly thereafter. Gibson then filed her complaint in the district court. NHC moved to dismiss Gibson's complaint on the ground that she had waived her right to a judicial determination of her claims against NHC by agreeing to submit such disputes to arbitration. The district court agreed, concluding that the Manual in connection with the Understanding created an enforceable arbitration agreement, and granted the motion to dismiss. In addition, because Gibson failed to abide by the deadline for submitting her claim to arbitration, the dismissal effectively foreclosed her ability to obtain redress. The district court therefore entered final judgment, from which Gibson now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

■ On appeal, the parties debate an important issue: whether the prerogative of litigating one's Title VII and ADA claims in federal court is the type of important right the relinquishment of which requires a knowing and voluntary waiver. The Supreme Court indicated in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 51–52 n. 15, 94 S.Ct. 1011, 1020–21, 39 L.Ed.2d 147 (1974), that an employee could not forfeit substantive rights under Title VII absent a voluntary and knowing waiver. In *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir.1995), we applied the knowing and voluntary standard set out in *Alexander* to an employee's release of age and race discrimination claims against his employer. Thus, before an employee cedes a substantive right grounded in federal statutory law, she must understand and freely make the decision to do so.

Less clear is whether the right to have one's federal claims determined judicially rather than in an arbitration proceeding qualifies for this added protection. Compare *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir.1997) (applying ordinary contract principles in determining whether employee agreed to submit Title VII claims to arbitration), with *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1305 (9th Cir.1994) ("[A] Title VII plaintiff may only be forced to forgo her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration."), and *Renteria v. Prudential Ins. Co.*, 113 F.3d 1104, 1105–06 (9th Cir.1997) (same). The Supreme Court has not reached this issue, but in dicta has stated that in agreeing to arbitrate a federal claim, a party "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)) (internal quotations omitted). Conversely, we have noted that "by being forced into binding arbitration [employees] would be surrendering their right to trial by jury—a right that civil rights plaintiffs ... fought hard for and finally obtained in the 1991 amendments to Title VII." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 362 (7th Cir.1997), petition for cert. filed, 65 U.S.L.W. 3783 (U.S. May 16, 1997) (No. 96–1830), and petition for cert. filed, 66 U.S.L.W. 3108 (U.S. Jul. 18, 1997) (No. 97–123).

This issue is further complicated by the strong federal policy in favor of arbitration as embodied in the substantive provisions involved in this case. See Civil Rights Act of 1991, Pub.L. No. 102–166 § 118, 105 Stat. 1071, 1081 (1991) (not codified) (authorizing use of arbitration where appropriate to resolve disputes arising under certain federal statutes, including Title VII); 42 U.S.C. § 12212 (same for ADA); see also Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. Thus, an employee's contractual agreement to submit her federal claims to arbitration implicates competing policy concerns.

Obviously, the strongest case for a court's finding that an employer and employee agreed to submit claims to arbitration will arise when the record indicates the employee has knowingly agreed to do so. If parties operate under these conditions, we believe that the twin goals of protecting federal rights and resolving claims where possible through arbitration will be effected. Moreover, the formation of arbitration agreements upon terms that both parties understand need not be unduly burdensome. The course that NHC undertook to alert those already employed to the change in policy (the convening of a meeting and the presentation of the appropriate documentation) demonstrates the feasibility of achieving this objective. While we therefore stress the advantage of arbitration agreements that are the product of an employee's knowing and voluntary consent, we decline today to decide whether such consent is a prerequisite to the validity of an agreement to arbitrate federal civil rights claims. To resolve this appeal, we need look no further than the state law of contract that generally governs arbitration agreements.

### III.

◼ The parties agree that an employee and employer may contractually agree to submit federal claims, including Title VII and ADA claims, to arbitration. See *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1656. An agreement to arbitrate is treated like any other contract. *Kresock v. Bankers Trust Co.,* 21 F.3d 176, 178 (7th Cir.1994). If there is no contract there is to be no forced arbitration. *Matthews v. Rollins Hudig Hall Co.,* 72 F.3d 50, 53 (7th Cir.1995); *Farrand v. Lutheran Bhd.,* 993 F.2d 1253, 1255 (7th Cir.1993) (citing *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *Adamovic v. METME Corp.,* 961 F.2d 652, 654 (7th Cir.1992). In determining whether a valid arbitration agreement arose between the parties, a federal court should look to the state law that ordinarily governs the formation of contracts. 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). In the present case, because Indiana was the situs of all

relevant events in this dispute, we look to the contract law of that state. *First Options of Chicago,* 514 U.S. at 944, 115 S.Ct. at 1924.

◼ Indiana courts apply ordinary contract principles to arbitration agreements. *St. John Sanitary Dist. v. Schererville,* 621 N.E.2d 1160, 1162 (Ind.Ct.App.1993); see also *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974); *International Union of Oper. Eng'rs. v. Indiana Constr. Co.,* 910 F.2d 450, 453 (7th Cir.1990). Under Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Wilson Fertilizer & Grain v. ADM Milling Co.,* 654 N.E.2d 848, 849 (Ind. Ct.App.1995). We note also that where, as here, the contract issue can be determined without resort to extrinsic evidence, the question is for the court and not a jury. *Kokomo Veterans, Inc. v. Schick,* 439 N.E.2d 639, 643 (Ind.Ct.App.1982); see also *Coplay Cement Co., Inc. v. Willis & Paul Group,* 983 F.2d 1435, 1438 (7th Cir.1993) (noting that federal courts applying state contract law follow state rules regarding assignment of duty of interpretation). The standard of review, which is determined as a matter of federal law, is de novo. *Id.* at 1438.

◼ It is a basic tenet of contract law that in order for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise. See *Shaw v. S.S. Kresge Co.,* 167 Ind. App. 1, 328 N.E.2d 775, 779 (1975); E. Allan Farnsworth, Farnsworth on Contracts § 2.2, at 61 (1990). Consideration is defined as bargained for exchange whereby the promisor (here Gibson) receives some benefit or the promisee (here NHC) suffers a detriment. *B–Dry Owners Assoc. v. B–Dry System, Inc.,* 636 N.E.2d 161, 163 (Ind.Ct.App. 1994); *Burdsall v. City of Elwood,* 454 N.E.2d 434, 436 (Ind.Ct.App.1983). Thus, in order for Gibson's agreement to be enforceable, there must be detriment to NHC or benefit to Gibson that was bargained for in exchange for Gibson's promise to arbitrate all disputes.

Often, consideration for one party's promise to arbitrate is the other party's promise to do the same. See, e.g., *Patterson*, 113 F.3d at 835; *Matterhorn v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir.1985). In the present case, however, NHC cannot point to its own promise to arbitrate in order to make enforceable Gibson's promise to do likewise. The Understanding contains no promise on NHC's part to submit claims to arbitration. It is worded entirely in terms of Gibson's obligation to submit her claims to arbitration (using phrases such as "I agree" "I understand" "I am waiving"); it contains no promise on NHC's part. In order for a contract to be enforceable, both parties must be bound by its terms. *Kokomo Veterans, Inc.*, 439 N.E.2d at 645. Although Indiana courts will not find that there was a lack of obligation on the part of one party when "a reasonable and logical interpretation will render the contract valid and enforceable," *Id.* at 645, there is no gloss we can apply to the language of the Understanding that would suggest that NHC was also required to forgo a judicial forum in favor of arbitration. To find that NHC was required to arbitrate any claim brought by Gibson would not give recognition to an obligation that was clearly present yet imperfectly expressed, *Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 559 (Ind.1983) (citing *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214, 214 (1917)), but rather would lend arcane meaning to the clear language chosen by NHC; to find an obligation here would be to weave a contract out of loose threads. Therefore, we conclude that the Understanding itself did not contain consideration for Gibson's promise in the form of a promise by NHC to submit disputes to arbitration.

In contrast to the one-sided obligation contained in the wording of the Understanding, the Manual contains language that arguably could be read to bind NHC. We conclude, however, that any promise NHC made in the Manual cannot serve as consideration for Gibson's promise to arbitrate. The absence of a meaningful link between Gibson's promise, contained in the Understanding, and NHC's obligation, set forth in the Manual, precludes reading these provisions as complementary components of a bargained for exchange. To be sure, contract terms may be incorporated by reference to a separate document, including an employee handbook, *Orr v. Westminster Village North, Inc.*, 651 N.E.2d 795, 801 (Ind.Ct. App.1995), and consideration for the promise in one instrument may be contained in another, *Goeke v. Merchants Nat'l Bank and Trust Co. of Indianapolis*, 467 N.E.2d 760, 768 (Ind.Ct.App.1984). Nevertheless, whatever the physical form by which a contract is memorialized (if any), proper consideration must consist of benefit or detriment given in exchange for the promise in question. The principal purposes of this consideration requirement are the "cautionary function of bringing home to the promisor the fact that his promise is legally enforceable and an evidentiary function ... of making it more likely that an enforceable promise was intended." *Scholes v. Lehmann*, 56 F.3d 750, 756 (7th Cir.) (citing Lon Fuller, Consideration and Form, 41 Colum. L.Rev. 799 (1941)), cert. denied, —— U.S. ——, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995). Neither of these functions is served when a promisor does not know of the promise that purportedly serves as consideration. Here, Gibson was unaware of the terms of the Manual (even if the Understanding's reference to the Manual alerted her to its existence) at the time she signed the Understanding. The promise that she made in the Understanding, therefore, was not given in exchange for any promise that NHC made in the Manual. In addition, although the Manual contains language that could be read to bind Gibson as well as NHC, Gibson did not (even in the objective or constructive sense) assent to the terms of the Manual, either when she signed the Understanding (at which point the Manual was not made available), or when she received the Manual. Consequently, there is no promise on the part of NHC that can serve as consideration for Gibson's promise to arbitrate.

Nor was Gibson's promise to submit claims to arbitration supported by consideration in the form of NHC's promise to hire her or to continue to employ her, or by its reasonable reliance on her promise. An initial offer of employment may constitute consideration for an employee's promise,

such as a covenant not to compete. *Advanced Copy Products Inc. v. Cool*, 173 Ind. App. 363, 363 N.E.2d 1070, 1071 (1977). However, NHC's offer of employment to Gibson was not made in exchange for her promise to arbitrate, for she had already been hired at the time she made the promise. Once again, the element of bargained for exchange is lacking. An employer's specific promise to continue to employ an at-will employee may provide valid consideration for an employee's promise to forgo certain rights. *Ackerman v. Kimball Int'l, Inc.*, 652 N.E.2d 507, 509 (Ind.1995) (holding that specific promise to continue at-will employment constitutes valid consideration for employee's agreeing to covenant not to compete); cf. *Licocci*, 445 N.E.2d at 564–65 (holding that new term of employment upon expiration of prior fixed period was valid consideration for employee's covenant not to compete, and distinguishing *Advanced Copy Products* as involving amendment to ongoing employment contract as opposed to new contract for additional term). In the present case, however, NHC never made a promise to continue Gibson's employment in exchange for her promise to submit claims to arbitration. That is, it never communicated to her that if she signed the Understanding she could continue to work there, and that if she did not her status would be uncertain. It is true that NHC continued to employ her. Yet when an employer has made no specific promise, the mere fact of continued employment does not constitute consideration for the employee's promise. See *Advanced Copy Products*, 363 N.E.2d at 1071 ("[S]ince the trial court found that there was no evidence which indicated that [the employee's] continued employment . . . was dependent upon his signing the new contract which contained the covenant not to compete . . . such continued employment did not constitute adequate consideration to support such covenant."); cf. *Leatherman v. Management Advisors, Inc.*, 448 N.E.2d 1048, 1050 (Ind.1983) ("[W]e have a situation in which MAI made certain promises to Leatherman, namely the promise to continue

employment and to pay certain compensation and other benefits to him, in exchange for his return promises . . . ."). Finally, while in the employment context it has been held that one party's partial performance in reliance upon the other party's promise may be sufficient consideration to make the promise enforceable, *Orr*, 651 N.E.2d at 800, there is no indication in the present case that NHC was induced to rely on Gibson's promise. It had made its decision to hire her prior to her agreeing to the terms of the Understanding, and there is no evidence that its decision to continue to employ her following her signing of the Understanding (on the day she returned to work) was based upon her agreeing to the terms contained therein. We therefore conclude that Gibson's promise to submit her claims against NHC to arbitration did not give rise to an enforceable contract.

Reversed and Remanded.

CUDAHY, Circuit Judge, concurring.

I agree that an employee cannot be bound to arbitrate his or her civil rights claims in the fashion presented here. In addition, there ought to be realistic requirements for achieving a valid arbitration agreement in the context of employment.

These requirements must recognize that we are dealing in most cases with a contract of adhesion: agree to arbitrate or lose your job. The majority appears to approve NHC's procedure of "the convening of a meeting and the presentation of the appropriate documentation." Maj. Op. at 1130. But we know nothing of what was said at NHC's meeting, not even whether consent to arbitration was imposed as a condition of further employment. And, apparently, the resulting arbitration "agreement" would consist of a patchwork of documents requiring some sophistication to interpret.[1] It seems to me that a knowing and voluntary waiver would require at the least, a single and explicit contractual document.

Returning to the case before us, I think it is unnecessary to explore all the relatively

---

1. Indeed, it is difficult to see how the Understanding can be used to bind an employee since not only is it signed by the employee alone, but it too contains an explicit disclaimer to the effect

that "[n]othing contained in the Associates Policy Manual is intended to create, nor be construed as creating, an express or implied contract or guarantee of employment."

technical aspects of the consideration doctrine since whatever Gibson signed, it was woefully short of a contract. The fact is that whatever "promise" is contained in the Associate Policy Manual is illusory because it is subject to the sweeping disclaimer language contained in the opening two paragraphs of the Manual. See Maj. Op. at 1128–29. In these paragraphs, not only did NHC retain the right to change or revoke any term contained in the Manual at any time and without notice, but it also declared that the Manual "does not constitute a contract nor promise of any kind." It is quite clear that NHC has committed itself to nothing. Under these circumstances it would be quite unfair to impose arbitration unilaterally on the plaintiff. Employers seeking to prescribe arbitration for the future should be required to "turn square corners." Cf. *Rock Island, A & LR Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920) (Holmes, J.).