James FELLOWS, M.D. Plaintiff,

v.

BOARD OF TRUSTEES OF WEL-BORN CLINIC, an Indiana Business Trust d/b/a Welborn Clinic, Defendant.

Board of Trustees of Welborn Clinic, an Indiana Business Trust d/b/a Welborn Clinic, Defendant/Counter–Claimant Third Party Plaintiff,

v.

James Fellows, M.D. Counter–Claim Defendant,

and

City/County Human Relations Commission, Third Party Defendant.

No. EV 98–132CYH.

United States District Court,
S.D. Indiana,
Evansville Division.

Dec. 29, 1998.

Keith A. Sermersheim, Rudolph Fine Porter & Johnson, Evansville, IN, Brian Owsley, Equal Employment Opportunity Commission, Washington, DC, for James Fellows, MD, plaintiff.

Brian Owsley, Equal Employment Opportunity Commission, Washington, DC, for Equal Employment Opportunity, plaintiff.

AJ Manion, Jeffrey R. Kinney, Sheffer-Hoffman, Evansville, IN, for Welborn Clinic Bd. of Trustees, defendant.

Malcolm S. Gwinn, Allan G. Loosemore, Jr., Shaw & Loosemore, Evansville, IN, for City/County Human Relations Com.

## ENTRY ON PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

YOUNG, District Judge.

This matter comes before the court on plaintiff's Complaint for Declaratory Judgment, filed on July 24, 1998. The court, having considered the exhibits, the parties' briefs, the parties' oral argument, and being duly advised, now issues its opinion, finding for Dr. Fellows on his Complaint for Declaratory Judgment.

### I. FACTS

1. Dr. Fellows is a physician licensed to practice urology at Welborn Clinic. He has been employed by Welborn Clinic since August of 1986. (Affidavit of James Fellows, M.D. ("Fellows Aff."), ¶ 2; EEOC Charge of Discrimination ("EEOC Charge"), attached to Fellows' Complaint, Exh. B).

2. In 1997, Welborn Clinic's assets were purchased by Phycor. As part of the transaction, Welborn Clinic amended the non-compete clause contained within its Second Amended Staff Agreement. (Testimony from the September 11, 1998 Oral Argument Hearing ("Hearing")).

3. A modification of the Second Amended Staff Agreement required a super-majority vote of the Welborn Clinic's Staff physicians. Dr. Fellows voted in favor of the modification. The modified version is known as the Third Amended Staff Agreement. (Hearing).

4. Dr. Fellows signed the Third Amended Staff Agreement ("Staff Agreement") which contains Welborn Clinic's standard arbitration provision:

> Section 14.8 Arbitration. Any dispute or controversy regarding the interpretation or application of this Agreement or the Staff Member Compensation Plan; the termination of a Staff Member; or enforcement of this Agreement (other than enforcement of a Staff Member's Noncompetition Covenant) shall be resolved by arbitration conducted under the Commercial Arbitration Rules of the American Arbitration Association. All arbitration hearings shall be conducted in Evansville, Indiana . . .

(Staff Agreement), attached to Fellows' Complaint, Exh. A; ¶ 14.8, Fellows' Aff., ¶ 3).

5. Execution of the Staff Agreement is a condition of employment for Staff Member Physicians, and the arbitration provision is non-negotiable. (Fellows' Aff., ¶ 4).

6. At the time Dr. Fellows signed the bulk signature page, along with approximately eighty (80) other physicians, the Staff Agreement was not attached. (Fellows Aff., ¶¶ 5 & 6). In fact, Dr. Fellows testified that he didn't receive the Staff Agreement until a couple of days after he signed it. (Hearing).

7. At the time Dr. Fellows signed the signature page, no one explained that the arbitration provision allegedly covered Title VII claims. (Fellows' Aff., ¶ 7).

8. In June, 1997, Dr. Fellows encouraged nurses to file charges of sexual

harassment against Dr. Siami, a urologist at Welborn Clinic. (EEOC Charge).

9. On June 9, 1998, Dr. Fellows filed a charge of discrimination with the Evansville Vanderburgh Human Relations Commission ("HRC") and the Equal Employment Opportunity Commission ("EEOC") alleging retaliation[1] in violation of Title VII of the Civil Rights Act of 1964. (EEOC Charge).

10. On July 7, 1998, Welborn Clinic's counsel sent a letter to Dr. Fellows' counsel demanding arbitration of Fellows' Title VII claims and further demanding that Dr. Fellows cease pursuing and assisting investigations conducted by the HRC and EEOC. (Correspondence of July 7, 1998, Exh. C).

11. To Dr. Fellows' knowledge, Welborn Clinic has not previously demanded arbitration of employment discrimination claims with respect to other Staff Member Physicians, including a Title VII claim filed by Dr. Siami. (Fellows' Aff, ¶ 8).

12. On July 15, 1998, Fellows filed another charge of discrimination alleging Welborn Clinic engaged in additional retaliatory activities by attempting to prevent Fellows from filing a charge of discrimination with the HRC and EEOC, and by attempting to prevent Fellows from assisting and/or cooperating with investigations by the HRC and EEOC.

13. On July 24, 1998, Fellows filed the instant case with this court.

## II. Analysis

In *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26, the Supreme Court held that an employee and an employer can contractually agree to submit an Age Discrimination in Employment Act claim to arbitration. *Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647 (1991). This case has been interpreted to include Title VII claims as

well. *Mago v. Shearson Lehman Hutton Inc.*, 956 F.2d 932 (9th Cir.1992); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991). Thus, if the court finds that the scope of the arbitration provision contained within the Staff Agreement includes Title VII claims, then Dr. Fellows must submit his claim to arbitration.

■ Pursuant to Seventh Circuit case law, arbitration agreements are contracts, and, in interpreting such agreements, federal courts are to apply state contract law. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997) (*citing Kresock v. Bankers Trust Co.*, 21 F.3d 176, 178 (7th Cir.1994)). Since this case arose in Indiana, the court will apply Indiana state contract law. Welborn Clinic, the party seeking to compel arbitration, has the burden of demonstrating the existence of an enforceable arbitration agreement. *Gibson*, 121 F.3d at 1130

■ The primary and overriding purpose when interpreting a written contract is to give effect to the parties' mutual intent at the time the contract is written. *Hutchinson, Shockey, Erley & Co. v. Evansville–Vanderburgh County Bldg. Auth.*, 644 N.E.2d 1228 (Ind.Ct.App.1994). Accordingly, where a contract is unambiguous, the express language contained in the four corners of a written contract controls the interpretation of the contract. *Hyperbaric Oxygen Therapy Systems, Inc. v. St. Joseph Medical Center of Ft. Wayne, Inc.*, 683 N.E.2d 243, 247 (Ind.Ct.App.1997), *trans. denied; Savings & Loan Ass'n of Central Indiana v. Treaster*, 490 N.E.2d 1149, 1152 (Ind.Ct.App.1986). However, where the provisions of a written contract are ambiguous, the court may resort to parole evidence or other means to determine the parties' intent. *Keithley's Auction Service v. Children of Jesse Wright*, 579 N.E.2d 657 (Ind.Ct.App.1991). A contract is ambiguous if reasonably intelligent

---

1. The alleged acts of retaliation by Welborn include 1) reducing his responsibilities as head of the urology department, 2) continual-

ly threatening to terminate his employment and 3) requiring him to engage in a mediation process with Dr. Siami. ("EEOC Charge"),

people could find the contract's provisions susceptible of more than one interpretation. *T.R.W., Inc. v. Fox Dev. Corp.,* 604 N.E.2d 626 (Ind.Ct.App.1992).

■■■ Ambiguous contracts are construed against the drafter. *Fresh Cut, Inc. v. Fazli,* 650 N.E.2d 1126, 1132 (Ind. 1995). In this case, the drafter is Welborn Clinic. In addition, "[t]he court must read all of the contractual provisions as a whole to accept an interpretation which harmonizes the contract's words and phrases and gives effect to the parties' intentions as established at the time they entered the contract." *Ryan v. Ryan,* 659 N.E.2d 1088, 1092 (Ind.Ct.App.1996) (*quoting Washington Nat'l Corp. v. Sears, Roebuck & Co.,* 474 N.E.2d 116, 121 (Ind.App. 1985)).

Dr. Fellows argues that the scope of the arbitration provision contained within the Staff Agreement does not encompass his Title VII claims.[2] Welborn Clinic argues that the arbitration provision does not encompass Dr. Fellows' Title VII claims since the Staff Agreement "defines and governs the parties' relationship pertaining to compensation, discipline, and termination."

■■ A review of the arbitration provision, as well as the Staff Agreement as a whole, reveals that the language employed in the arbitration provision limits the class of disputes that can be submitted to arbitration to the following three circumstances: 1) any dispute or controversy regarding the interpretation or application of the Staff Agreement Compensation Plan; 2) the termination of a Staff Member; or 3) enforcement of the Staff Agreement. To interpret this provision as including *all* possible employment disputes would render this contractual provision superfluous. Thus, the issue to address is whether Dr. Fellows' Title VII retaliation claim is within the class of disputes encompassed within the arbitration provision.

2. For purposes of this entry, the court presumes that Dr. Fellows' claim of retaliation is

The court notes that each provision, when read as a whole, relates only to *contract* disputes, not disputes under Title VII. This fact is of utmost importance, for Dr. Fellows' claim arises not out of contract, but out of Title VII, and is separate and distinct from the contractual rights provided in the Staff Agreement. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 49–50, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (discharged employee whose grievance had been arbitrated pursuant to collective bargaining agreement was not foreclosed from bringing Title VII claim in federal court based upon conduct that was the subject of the arbitration).

Specifically, the first enumerated circumstance in which arbitration is mandated under the Staff Agreement is inapplicable as it relates directly to the Staff Agreement Compensation Plan. The second enumerated circumstance is inapplicable as there is no evidence that Dr. Fellows was terminated. The third enumerated circumstance in which arbitration is mandated relates directly to the enforcement of the Staff Agreement. The Staff Agreement, however, does not discuss or indirectly elude to Title VII claims.

■■ Upon close examination of the Staff Agreement, the only section which is arguably applicable to Dr. Fellows' Title VII claim is Section 4.2., entitled Disciplinary Action. That section states, in relevant part:

Section 4.2.1 The Board of Trustees may impose disciplinary sanctions, including but not limited to, the imposition of monetary penalties, against Staff Members to enforce Board-approved policies that are important for maintaining the Mission Statement of Welborn Clinic and to enforce or compel compliance with Board of Trustees policies and directives. Such sanctions may be im-

valid.

posed against individual non-complying Staff Members or groups of non-complying Staff Members. The Board of Trustees shall establish general written policies, regarding sanctions, including infraction definition, the types and ranges of sanctions for infractions, and the methods of payment of monetary penalties ...

Even if this contractual provision is susceptible to the interpretation advanced by Welborn Clinic such that Dr. Fellows' Title VII claim is arguably encompassed within the arbitration provision, the contract is equally susceptible to the interpretation advanced by Dr. Fellows—that Title VII claims fall outside the arbitration agreement. Since Welborn Clinic drafted this agreement, the court will construe the contract against it and in favor of Dr. Fellows.

This court's holding today is further supported by the Supreme Court's recent decision in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1988), wherein the Court held that where a collective-bargaining agreement's language did not contain a "clear and unmistakable waiver of an employees' rights to a judicial forum for federal claims of employment discrimination," an employee could not be forced to arbitrate his federal Americans With Disabilities Act claim. Upon review of the Staff Agreement, the court finds the Staff Agreement at issue does not contain "a clear and unmistakable waiver."

For the reasons just enunciated, the court declares that the arbitration provision contained within the Staff Agreement is inapplicable to his Title VII retaliation claim.

### III. Conclusion

Because the arbitration provision contained with the Staff Agreement does not encompass Dr. Fellows' Title VII retaliation claim, the court declares the arbitration provision contained within the Staff

Agreement is inapplicable to Dr. Fellows' Title VII claim of retaliation.

**So ordered.**