Pamela N. DORSEY, Plaintiff,

v.

H.C.P. SALES, INC. and Greentree Financial Servicing Corporation, Defendants.

No. 98 C 6729.

United States District Court, N.D. Illinois, Eastern Division.

April 20, 1999.

Michelle Ann Weinberg, Law Offices of Michelle A. Weinberg, Chicago, IL, for Pamela N. Dorsey, plaintiff.

James Dominick Adducci, Marshall Lee Blankenship, Adducci, Dorf, Lehner,

Mitchell & Blankenship, P.C., Chicago, IL, Greentree Financial Servicing Corporation, defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Pamela Dorsey ("Dorsey") sues the defendants, H.C.P. Sales ("HCP") and Greentree Financial Services ("Greentree"), for harms allegedly caused by their performance of various home improvements and the related financing contracts. Although most of her claims arise under state law, she presents a federal question under the Truth in Lending Act, 15 U.S.C. § 1635 ("TILA"). Presently before the Court is Greentree's motion to compel arbitration under the terms of a financing agreement signed by Dorsey. We grant Greentree's motion to compel arbitration and stay these proceedings pending completion of that arbitration.

## BACKGROUND

In December 1997, Dorsey hired HCP to perform certain improvements on her home. HCP agreed to arrange financing by Greentree. HCP began remodeling Dorsey's home at the end of December 1997 even though Dorsey had yet to see, much less sign, any loan documents. The first time Dorsey saw any loan paperwork was on February 4, 1998, after HCP had substantially completed its work on her home. Dorsey signed all of the documents HCP placed before her.[1]

One of the documents Dorsey signed, the Retail Installment Contract and Security Agreement for Home Improvement ("Installment Contract"), contains an arbitration clause:

All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract, or the validity of this arbi-

tration clause or the entire contract, shall be resolved by binding arbitration.... The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this contract.

(Compl.Ex. C, Installment Contract at 3.) The contract, however, exempts certain types of legal actions from mandatary arbitration:

Notwithstanding anything hereunto the contrary, we retain an option to use judicial or non-judicial relief to enforce a mortgage, deed of trust, or other security agreement relating to the real property secured in the in a transaction underlying this arbitration agreement, or to enforce the monetary obligation secured by the real property, or to foreclose on the real property.

(*Id.*) In exchange for a $14,500 loan, Dorsey pledged a security interest in her house and in the goods she purchased with the loan. (*Id.* at 1.)

Predictably (because we are here), Dorsey was unhappy with HCP's work and, on July 29, 1998, mailed a letter purporting to rescind the Installment Contract under TILA, 15 U.S.C. § 1635, and Regulation Z, 12 C.F.R. § 226.23. (Compl.Ex. H, Letter from Dorsey's attorney, Michelle Weinberg, to HCP and Greentree of 7/29/98.) In October 1998, she filed her federal lawsuit. Dorsey believes that HCP and Greentree violated TILA by failing to disclose the statutory recission period and provide written notice of her right to rescind. (Compl. Count I.) She also presents four claims based in state law.

The defendants believe that the Installment Contract requires Dorsey to arbitrate all of her claims. Dorsey, on the other hand, argues that because she re-

---

1. Dorsey attached to her complaint every document related to her dispute with the defendants. (Complaint, Exs.A–H.)

scinded the contract under TILA the arbitration agreement is unenforceable. Alternatively, she argues that this Court should not enforce the arbitration clause because it lacks mutuality, she never actually agreed to arbitrate disputes, and it is part of an unenforceable adhesion contract. Finally, she insists that enforcing the arbitration agreement in this case would be against public policy because the cost to Dorsey of pursuing arbitration would be prohibitive.

## ANALYSIS

Dorsey signed a document containing as broad an arbitration clause as it is possible to draft. Not only does it reserve for arbitration the merits of all disputes, the validity of the contract, and the arbitrability of a dispute; it also reserves the validity of the arbitration clause itself to an arbitrator. That last provision leaves us with a somewhat circular problem: on its face, the contract dictates arbitration of the issue whether Dorsey agreed to arbitrate her disputes but Dorsey claims she never agreed to that contractual term. In other words, the issues Dorsey raises must be arbitrated unless, based on the issues she raises, she never agreed to arbitrate those issues. Because the Federal Arbitration Act instructs courts to compel arbitration "upon being satisfied that the issue involved in [the lawsuit] is referable to arbitration under [the arbitration] agreement," we must satisfy ourselves that Dorsey did in fact agree to arbitrate her disputes. *See Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997) ("If there is no contract there is to be no forced arbitration.").

■■■■ When ruling on a motion to compel arbitration, "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). We look only to issues regarding the arbitration clause itself, and "will not allow a party to unravel a contractual arbitration clause by arguing that the clause was part of a contract that is voidable." *Colfax Envelope Corp. v. Local 458–3M, Chicago Graphic Communications Int'l Union*, 20 F.3d 750, 754 (7th Cir.1994) (citations omitted). Thus, Dorsey's recission argument is unavailing.[2] *See Sokaogon Gaming Enter. Corp. v. Tushie–Montgomery Assoc., Inc.*, 86 F.3d 656, 659 (7th Cir.1996) ("Although the arbitration clause is contained in a contract that the tribe contends is illegal, the tribe rightly does not contend that the illegality of the contract infects the arbitration clause."); *Colfax*, 20 F.3d at 755 ("[A] contract dispute is arbitrable even if one party argues that the contract should be rescinded."); *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.*, 1 F.3d 639, 641–42 (7th Cir.1993) ("[A] dispute, which has as its object the nullification [or rescission] of a contract, 'arise[s] out of' that same contract" and, thus, is arbitrable.).

■■■■ Similarly, her "general" unconscionability contentions go to the validity of the entire contract and thus are not properly before us at this stage of the litigation. Specifically, her arguments pertaining to the unfairness of the contract formation process—the "take it or leave it" nature of the transaction, the unequal bargaining power, negotiations that occurred after the remodeling job was completed—are insufficient to defeat the motion to compel.[3] Instead of gener-

**2.** Although Dorsey cites no case law in support of her recission claim, in at least one case Greentree has lost under remarkably similar circumstances. *See Taylor v. Domestic Remodeling, Inc., Green Tree Financial Corp.*, 97 F.3d 96 (5th Cir.1996). In *Taylor*, the plaintiff prevailed on her TILA claim because Greentree did not provide required disclosures until after Domestic had completed the remodeling work. However, the contract at issue in *Taylor* did not contain an arbitration clause, at least none is mentioned.

**3.** We analyze Dorsey's arguments pertaining to the unconscionability of the actual arbitration clause below.

ally attacking the contract, Dorsey must show that the parties never agreed to arbitrate their disputes. *Colfax*, 20 F.3d at 754.

We treat an agreement to arbitrate like any other contract, and look to state law to determine whether an arbitration clause is enforceable. *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 366–67 (7th Cir.1999). Dorsey argues that the arbitration clause is void because it lacks mutuality and is itself unconscionable. Additionally, she maintains that she, having not read that part of the contract, never actually agreed to arbitration. This last claim is quickly disposed of: a party's failure to read a contract does not invalidate unread contractual terms or excuse that party's performance under the contract. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir.1997); *Breckenridge v. Cambridge Homes, Inc.*, 246 Ill. App.3d 810, 186 Ill.Dec. 425, 616 N.E.2d 615, 620 (1993).

As to mutuality, Dorsey claims that the arbitration clause in unenforceable because it "is completely one sided, . . . the defendant has reserved solely to itself the right to go to court for the only claim it is likely ever to be concerned with—to enforce repayment of the loan." (Dorsey Resp. at 10.) But Illinois law is quite clear that contracts need not be reciprocal to be enforceable. In other words, parties need not undertake identical obligations. Instead, mutuality is "only required to the extent that both parties to an agreement are bound. If the requirement of consideration has been met[,] mutuality of obligation is not essential." *S.J. Groves & Sons Co. v. State*, 93 Ill.2d 397, 67 Ill.Dec. 92, 444 N.E.2d 131, 134 (1982), *overruled on other grounds by Rossetti Contracting Co. v. Court of Claims*, 109 Ill.2d 72, 92

Ill.Dec. 521, 485 N.E.2d 332 (1985) (quotations and citations omitted); *see also Design Benefit Plans, Inc. v. Enright*, 940 F.Supp. 200, 205–206 (N.D.Ill.1996) (applying *S.J. Groves* in challenge to an arbitration clause). Clearly, the contract is supported by consideration on both sides;[4] Dorsey does not argue otherwise. Under Illinois law, that is sufficient. *See also Kroll v. Doctor's Assoc., Inc.*, 3 F.3d 1167, 1171 (7th Cir.1993) ("[P]arties can agree to arbitrate some disputes and not others . . . . [and] not undermine the mutuality of the . . . arbitration provision."). Dorsey's reliance on *Hull v. Norcom, Inc.*, 750 F.2d 1547 (11th Cir.1985) (voiding an arbitration clause for lack of mutuality when one party reserved the option to judicially resolve a majority of its claims) is fruitless because the Illinois courts have explicitly (and implicitly) rejected that approach. *See Jacob v. C & M Video, Inc.*, 248 Ill. App.3d 654, 188 Ill.Dec. 697, 618 N.E.2d 1267, 1271 (1993).

Dorsey also attacks the arbitration clause itself as unconscionable because Greentree reserved to itself the power to choose the arbitrator. But a careful read of the arbitration clause reveals that Dorsey must consent to Greentree's choice: "All disputes . . . shall be resolved by one arbitrator selected by us with consent of you."

Finally, Dorsey asserts that enforcing the arbitration clause would be against public policy because the cost to her would be prohibitive. She relies on a slew of cases commenting on Congress' intent to provide a less expensive alternative to litigation. *See, e.g., Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). True as that may be, Congress did not

---

4. *Gibson,* relied heavily upon by Dorsey, is distinguishable because there the plaintiff-employee's promise to arbitrate disputes was not supported by *any* consideration: she had already been hired when the defendant-company asked her to sign the arbitration agreement, and the company did not promise any-

thing in exchange for her promise. 121 F.3d at 1132. Here, in return for Dorsey's various promises, including her promise to arbitrate, Greentree promised to loan her money for remodeling. Additionally, Dorsey and Greentree agreed to be bound by the Installment Contract.

authorize courts to evaluate plaintiffs' arbitration costs on a case-by-case basis when determining whether to compel arbitration. "Whatever may be said pro and con about the cost and efficiency of arbitration . . . is for Congress and the contracting parties to consider." *Hill,* 105 F.3d at 1151. Dorsey cannot escape her contractual obligation to arbitrate her disputes by now complaining about the cost.[5]

## CONCLUSION

Although some of Dorsey's policy arguments are superficially attractive and we are sympathetic to her unique circumstances, Congress and Illinois have both implemented a strong policy favoring arbitration agreements. Perhaps those bodies did not foresee the potential iniquities arising from that policy—the possibility that individual consumers could be forced to undertake expenses greater than those imposed by the respective judicial systems. However, it is not for the courts to rewrite the policy favoring arbitration in individual cases. Under current caselaw and for the reasons stated above, Dorsey must submit her claims against Greentree and HCP to arbitration. Thus, we grant Greentree's motion to compel arbitration (5–1) and stay (5–2) this action pending completion of those proceedings.

---

**5.** Dorsey's other arguments are frivolous. For example, she complains that the arbitration agreement was "buried in fine print," but the arbitration clause is set in the same font and type-size as every other provision in the contract. She also asserts that the clause is confusing and the rights she was relinquishing were not clearly delineated. But the clause is eminently clear: it states that "[t]he parties agree and understand that they choose arbitration instead of litigation to resolve dis-

putes," and, in bold print, that they "voluntarily and knowingly waive any right they have to a jury trial." Although she claims the clause is deceptive, she does not identify how and it's certainly not obvious from the text. Finally, she argues that the Federal Arbitration Act does not apply to consumer contracts. She is wrong. *See, e.g., Hill,* 105 F.3d 1147 (applying FAA to consumer contract for a personal computer).