**Cindy (Dini) DeGROFF, Plaintiff,**

**v.**

**MASCOTECH FORMING TECH-
NOLOGIES–FORT WAYNE,
INC., Defendant.**

No. 1:00–CV–456.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 6, 2001.

Christopher C. Myers, Shane C. Mulholland, Christopher Myers and Associates, Fort Wayne, IN, for Cindy (Dini) Degroff.

Paul Harrison Sinclair, Ice Miller, Indianapolis, IN, for Mascotech Forming Technologies–Fort Wayne Inc.

## MEMORANDUM OF DECISION AND ORDER

COSBEY, United States Magistrate Judge.

### I. INTRODUCTION

The Plaintiff, Cindy DeGroff (hereafter "Plaintiff" or "DeGroff") brought this suit against the Defendant, MascoTech Forming Technologies–Fort Wayne, Inc. (hereafter "Defendant" or "MascoTech") alleging that she was constructively discharged as a result of sexual harassment in violation of Title VII ("Title VII")of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* This matter is before the Court[1] on the Defendant's "Motion to Dismiss and Compel Compliance with Defendant's Corporate Dispute Resolution Policy" filed on February 2, 2001. In support of its mo-

---

1. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

tion, the Defendant submitted the affidavit of Joe Sepkovich (hereafter "Sepkovich affidavit ¶ ——"), MascoTech's Dispute Resolution Policy (hereafter "Policy at ——"), and various other documents.

The Plaintiff responded to the motion to dismiss on February 20, 2001, and submitted DeGroff's affidavit (hereafter "DeGroff aff. ¶ ——") and various letters reflecting settlement negotiations.

The Defendant filed a reply on March 12, 2001, and submitted the supplemental affidavit of Joe Sepkovich (hereafter "Sepkovich supp. aff. ¶ ——"), a question and answer form given to all employees regarding the policy, and a copy of the National Rules for the Resolution of Employment Disputes.

The Court converted the motion to dismiss to one for summary judgment and gave the parties an opportunity to submit additional documentation.[2] As a result, the Plaintiff filed a sur-reply on March 26, 2001. The Court then stayed the matter until the Seventh Circuit resolved *Penn v. Ryan's Steak Houses*, 269 F.3d 753 (7th Cir.2001). *Penn* has now been addressed and all supplemental briefs have been submitted. Therefore, the present motion is now ripe for review. For the reasons hereafter stated, the Defendant's motion for summary judgment and to compel arbitration will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 1998, DeGroff applied for a position at MascoTech. As part of the application process, DeGroff signed an agreement, premised by the words "Read Carefully Before Signing," stating:

I agree that in exchange for consideration of my possible employment with the Company I will be bound, as though an employee, by the Corporate Dispute Resolution Policy. Further, in the event of employment, I will also be bound by the Corporate Dispute Resolution Policy. As a result, Mediation, and, if unsuccessful, Arbitration will be the sole and exclusive remedies for any claims covered by the Corporate Dispute Resolution Policy and I agree not to pursue any such claims in Court through a judge or a jury. *I acknowledge that I have had the opportunity to review the Corporate Dispute Resolution Policy prior to signing this document.*

(Employment App.) (emphasis added). Notwithstanding the last sentence, DeGroff claims she was never given an opportunity to read the Corporate Dispute Resolution Policy before signing the application. (DeGroff aff. ¶ 4).

DeGroff began working at MascoTech as a furnace operator through a temporary agency in February and March of 1998. (DeGroff aff. ¶ 8.) Then, on April 1, 1998, while at work, MascoTech gave DeGroff an offer of employment. Indeed, Joe Sepkovich, the Human Resource Manager, approached DeGroff during her shift, and told her "you need to sign this paperwork to get you on the payroll—I know you're busy, let's do it quickly and you can go back to work." *Id.* Apparently, the "paperwork" included an offer of employment conditioned on DeGroff's agreement with the Policy, and a one sentence acknowledgment stating, "I acknowledge receipt of the Corporate Dispute Resolution Policy and the Questions and Answers." (*See*

---

**2.** While we converted the motion to dismiss into one for summary judgment under Fed. R.Civ.P. 12(b)(6) in accordance with *Jenks v. Workman*, No. IP99–1389–C–T/G, 2000 WL 962821, at * 6 (S.D.Ind. June 22, 2000), the motion to compel arbitration could also be considered under Fed.R.Civ.P. 12(b)(1). *See, e.g., McCaskill v. SCI Management Corp.*, No. 00–C–1543, 2000 WL 875396, at 1, n. 1 (N.D.Ill. June 22, 2000).

April 1, 1998 Letter; acknowledgment.) DeGroff signed both documents, but maintains she was not given copies of them, or even an opportunity to review them or the Policy.[3] (DeGroff aff. ¶ 4, 8.)

Under the Policy, all claims, including claims of discrimination, arising out of the employee's employment or termination, are to be resolved through mediation, and if necessary, arbitration. (Policy at 1.) The Policy also provides that MascoTech and its employees are subject to the Employment Dispute Resolution Rules of the American Arbitration Association ("AAA"). (Policy at 2.) Additionally, the Policy provides that the "mediation and arbitration will be conducted by a neutral third party, the [AAA]." *Id.*

On October 27, 1999, the Plaintiff resigned from MascoTech. On January 24, 2000, she filed a Charge of Discrimination with the EEOC, alleging she was sexually harassed while employed at MascoTech. Apparently, this led to some unsuccessful EEOC settlement efforts.[4] The EEOC then issued a right to sue letter, and the Plaintiff commenced this suit on December 8, 2000.

MascoTech now seeks compliance with what it contends is a legally binding arbitration policy and agreement. While DeGroff acknowledges that she signed the agreement to arbitrate, she contends it is unenforceable because (1) it constitutes an invalid contract; (2) the Policy fails to protect her Title VII rights; and (3) MascoTech waived any right to enforce the arbitration clause. We will eventually address each argument in turn.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th

---

**3.** MascoTech claims that DeGroff was given a copy of the Policy, along with explanatory questions and answers. (Sepkovich aff. ¶¶ 6, 12). At this point, however, we must resolve all factual disputes in favor of the non-moving party, the Plaintiff.

**4.** While MascoTech contends it never made a settlement offer, (*see* Def.'s Reply Br. at 14–15), it appears it made at least one. (*See* EEOC October 13, 2000 letter; EEOC October 24, 2000 letter).

Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Cont'l Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

In any event, in employment discrimination matters, the standard on summary judgment is applied with "added rigor." *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). As the Seventh Circuit reiterated in *Robinson v. PPG Industries, Inc.,* 23 F.3d 1159, 1162 (7th Cir. 1994), citing the standard set out in *Sarsha:*

Summary judgment is appropriate only when the materials before the court demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. Accordingly, we will affirm the decision of the district court only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a

directed verdict.[5] [citations omitted].

However, the 7th Circuit has recently clarified its use of the phrase added rigor, stating that the "original use of this phrase indicates that it was merely included to stress the fact that employment discrimination cases typically involve questions of intent and credibility, issues not appropriate for this court to decide on a review of a grant of summary judgment." *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir.2001).

## IV. DISCUSSION

Under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), written agreements to arbitrate disputes, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see, e.g., Penn,* 269 F.3d at 758–59; *Kreimer v. Delta Faucet Co.,* 2000 WL 962817, *2 (S.D.Ind. June 2, 2000). Moreover, the FAA "manifests a 'liberal federal policy favoring arbitration agreements.'" *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Indeed, the Seventh Circuit has reiterated that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased. *Penn,* 269 F.3d at 758 (citing *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Gilmer,* 500 U.S. at 30, 111 S.Ct. 1647). Thus, when a valid agreement to arbitrate exists between the parties, the FAA requires the federal courts to stay any ongoing judicial proceedings, 9 U.S.C. § 3, and to compel arbitration. 9 U.S.C. § 4.

In order to determine whether a claim is arbitrable, the court must examine (1) whether a valid and enforceable arbitration agreement exists; (2) whether the claims fall within the scope of the agreement; and (3) whether there has been a waiver. *See Gilmer,* 500 U.S. at 24–34, 111 S.Ct. 1647; *e.g., Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 364 (7th Cir.1999). Since DeGroff does not contend that her claims fall outside the scope of the agreement, we will confine our analysis to the first and third factors.

## A. This is a Valid and Enforceable Arbitration Agreement

■ When determining whether a valid arbitration agreement exists between the parties, we look to Indiana state law to address whether a contract has been formed. *Penn,* 269 F.3d at 759 (citing *Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1130 (7th Cir.1997)); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Under Indiana law, "the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement." *Gibson,* 121 F.3d at 1130 (citing *Wilson Fertilizer & Grain v. ADM Milling Co.,* 654 N.E.2d 848, 849 (Ind.Ct.App. 1995)); *Mislenkov v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind.Ct. App.2001). When a contract issue can be determined without resorting to extrinsic evidence, the question is for the court, and not a jury. *Gibson,* 121 F.3d at 1130.

---

**5.** The anachronistic term "Directed Verdict" is no longer used; rather, it has been more accurately retitled "Judgment as a Matter of Law." *See* Fed.R.Civ.P. 50(a). A defendant is entitled to such a judgment if "there is no legally sufficient evidentiary basis for a reasonable jury to find for" the plaintiff. *Id.*

## 1. A Binding Contract was Formed as a Matter of Law

### a. A Meeting of the Minds Occurred

■ A valid contract requires offer, acceptance, and a meeting of the minds. *Flynn v. AerChem, Inc.*, 102 F.Supp.2d 1055, 1059 (S.D.Ind.2000) (citing *Bain v. Board of Trustees of Starke Mem'l Hosp.*, 550 N.E.2d 106, 110 (Ind.Ct.App.1990)); *Homer v. J.M. Burman*, 743 N.E.2d 1144, 1146–47 (Ind.Ct.App.2001). A "meeting of the minds" occurs when the parties have the same intent. *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 883 (Ind.Ct.App. 2000). When an agreement is evidenced by a written instrument, courts look to that document to determine the parties' intent, and whether a meeting of the minds occurred. *Flynn*, 102 F.Supp.2d at 1059. When doing so, courts do not look for the parties' hidden intentions, but instead examine the final expression of the parties' intent from the written agreement. *Id.* Here, DeGroff signed three separate documents, which we will examine to determine the intent of the parties.

■ First, DeGroff admits that her initial employment application, signed on January 9, 1998, clearly provided for resolution of all employment disputes solely through "Mediation, and if unsuccessful, Arbitration...." (Employment App.) Nevertheless, DeGroff contends she has "no memory" of signing the application, and never reviewed the policy referenced in her employment application. (*See* DeGroff aff. ¶ 4.) This assertion soon confronts the well-settled proposition of Indiana law that "[someone who] does not read an instrument which he signs is, as a general rule, guilty of negligence...." *Ruff v. Charter Behavioral Health Sys. of Northwest*

*Indiana, Inc.*, 699 N.E.2d 1171, 1175 (Ind. Ct.App.1998) (quoting *Robinson v. Glass*, 94 Ind. 211, 212 (1884)). Indeed, it is a basic tenant of contract law that a "person is assumed to have read and understood [the] documents ... they sign; a lack of understanding or *failure to read the contract's provisions* does not relieve a party from the terms of that agreement." *Flynn*, 102 F.Supp.2d at 1059 (emphasis added) (citing *Clanton v. United Skates of America*, 686 N.E.2d 896, 900–01 (Ind.Ct. App.1997)); *see also Emeronye v. CACI Int'l, Inc.*, 141 F.Supp.2d 82, 86 (D.D.C. 2001) (plaintiff assumed to have read the contract despite being unable to recall signing contract); *Maye v. Smith Barney, Inc.*, 897 F.Supp. 100, 108 (S.D.N.Y.1995) ("[A]n argument [that the plaintiff lacked] time to read an agreement before signing it must fail or else almost every arbitration agreement would be subject to an effective court challenge."). By signing the application, DeGroff effectively concedes she had an opportunity to review the Policy, and cannot now avoid its terms.[6] *Flynn*, 102 F.Supp.2d at 1059.

Moreover, DeGroff signed two other documents agreeing to be bound by the Policy. The first is an April 1, 1998 letter in which she accepts MascoTech's offer of employment, conditioned on her agreeing with the Company's Corporate Dispute Resolution Policy. (*See* April 1, 1998 letter.) The second is a one-sentence form that simply states, "I acknowledge receipt of the Corporate Dispute Resolution Policy and the Questions and Answers." (*See* Acknowledgment.) As with the initial employment application, DeGroff cannot avoid the Policy by simply claiming she did not read these documents either. *Id.*

---

**6.** While DeGroff alleges that MascoTech engaged in "trickery" to gain her signature on later forms containing the policy, she does make this allegation about her initial application.

■ Nevertheless, DeGroff contends she was actually tricked into signing these two documents, ostensibly so the company could get her on the payroll quickly, and she did not read them or get copies. (*See* DeGroff aff. ¶ 8). However, as generally stated *supra*, "failure to read [a] contract's provisions does not relieve a party from the terms of that agreement." *Flynn*, 102 F.Supp.2d at 1059. Nevertheless, one limited exception to this rule exists; namely, when a party is tricked into not reading a document or by misplaced trust and confidence is lulled into relying on another's representation as to its character and content. *Ruff*, 699 N.E.2d at 1174.

■ While DeGroff contends some sort of trickery led her to sign these documents, the cases she cites indicate that one contracting party ordinarily has no right to rely upon the representations of the other as to the character or contents of a written statement. *See Plymale v. Upright*, 419 N.E.2d 756, 762 (Ind.Ct.App.1981) (quoting *Robinson*, 94 Ind. at 214).[7] The exception occurs if "a known trust and confidence is reposed in the person making the representations ... there is a relationship justifying such trust and confidence," and the person to whom the representations are made reasonably relied upon them. *Plymale*, 419 N.E.2d at 762; *see also Ruff*, 699 N.E.2d at 1171 (discussing justifiable reliance on the defendant's representations).

Here, DeGroff initially was only a temporary employee, and as far as we can determine, had no particular trust or confidence in anyone at MascoTech.[8] *See, e.g., McWaters v. Parker*, 995 F.2d 1366, 1372–73 (7th Cir.1993) (plaintiff bound by signature when he failed to use common sense, and rather than reading a half-page document, relied on insurance adjuster's representation); *cf., Ruff*, 699 N.E.2d at 1174 (plaintiff justified in relying on representations due to a prior working relationship with the defendant who had previously followed through with promises). Moreover, DeGroff has not explained how she relied on any representations to her detriment, and therefore, cannot avoid the legal effect of her signature on the subject documents.

■ Finally, to resolve any doubt that a meeting of the minds occurred, DeGroff's continued employment was explicitly conditioned upon her compliance with the Policy. (*See* Policy at 1.) Indeed, this condition was clearly spelled out in the written questions and answers: "As a condition of continued employment all covered employees, as well as MascoTech, Inc., will be required to follow the Policies and are bound by their terms." (Questions and Answers, at 1). Therefore, under Indiana law, DeGroff became bound by the Policy as a result of receiving the benefit of continued employment after she signed the acknowledgment form.[9] *See Kreimer*,

---

7. DeGroff appears to argue that she can invalidate the documents by showing either trickery or the violation some misplaced trust, but the caselaw suggests that trickery cannot be established absent a showing of trust or confidence. *See, e.g., Plymale*, 419 N.E.2d at 763 (quoting *Robinson*, 94 Ind. at 214); *Ruff*, 699 N.E.2d at 1174–75 (employee had long standing relationship with individual who made the alleged misrepresentation). In any event, we cannot find even an inference of trickery on this record.

8. Ordinarily, the question of justifiable reliance is a jury question. However, where the evidence is clear that any reliance is not justified or does not exist at all, such as the case here, the court may decide the issue as a matter of law. *See, e.g., Plymale*, 419 N.E.2d at 763 (quoting 37 C.J.S. Fraud § 129, at 455–456).

9. Under Indiana law, an employee can manifest acceptance of a contract through continued employment with the employer. *International Creative Mgmt. v. D & R Entertainment*

2000 WL 962817, at *4. Stated simply, after DeGroff received the Policy with the written questions and answers, her continued at-will employment with MascoTech for eighteen (18) months demonstrates an acceptance of the Policy. *See Kreimer,* 2000 WL 962817, at *4.

### b. Adequate Consideration Exists

■ Since DeGroff cannot avoid the agreement she signed, we must now determine whether it is supported by adequate consideration. To make this determination, we apply a "benefit-detriment and a bargained-for-exchange approach in defining consideration ... [and] look for a promisor receiving a benefit or a promisee suffering some detriment, which was bargained-for in exchange for the promise." *Flynn,* 102 F.Supp.2d at 1060.

As an initial matter, the employment application alone does not provide adequate consideration for DeGroff's promise to arbitrate. Indeed, the application states that "in exchange for consideration of my possible employment with the Company I will be bound, as though an employ-

ee, by the Corporate Dispute Resolution Policy." (Employment App.) Thus, the only benefit DeGroff received from signing the application was MascoTech's promise to consider employing her, and this alone is insufficient to constitute adequate consideration.[10] *Penn,* 269 F.3d at 760–61; *Geiger v. Ryan's Family Steak Houses, Inc.,* 134 F.Supp.2d 985, 1001–02 (S.D.Ind. 2001).

Nevertheless, "contract terms may be incorporated by reference to a separate document ... and consideration for the promise in one instrument may be contained in another." *Gibson,* 121 F.3d at 1131 (internal citations omitted); *Penn,* 269 F.3d at 760.

Here, DeGroff's application specifically incorporates by reference the Policy (*see* Employment App.)[11] and constitutes MascoTech's promise (1) to offer continued employment; (2) to be bound by the arbitrator's decision; and (3) to pay all of the expenses and fees of both the mediator and arbitrator.

While DeGroff conclusorily states that the Agreement fails for lack of consider-

Co., 670 N.E.2d 1305, 1312 (Ind.Ct.App. 1996); *Kreimer,* 2000 WL 962817, at *3 (employee's signature on form acknowledging receipt of an arbitration policy and continued employment constituted acceptance of the policy); *Cinram, Inc. v. Worldwide Entertainment Group, LLC,* 2000 WL 1124591, *3 (S.D.Ind. Aug.7, 2000).

**10.** Moreover, the remaining portions of the application are worded entirely in terms of DeGroff's obligation to submit her claims to arbitration (*e.g.,* "I will be bound," "I agree," and "I acknowledge") and contains no promise by MascoTech to submit its claims to arbitration. Since a contract is only enforceable if both parties are bound by its terms, the consideration in the application is insufficient in itself to support DeGroff's promise to arbitrate. *See Gibson,* 121 F.3d at 1131 (finding no consideration for promise to arbitrate when employer failed to promise the same).

**11.** Likewise, the terms of the Policy incorporate into the agreement the AAA Employment Dispute Resolution Rules (as amended and effective on June 1, 1997) ("AAA's Rules"). (*See* Policy at 2). *See, e.g., Witz v. Apps,* 2000 WL 1720434, at * 3 (N.D.Ill. Nov. 14, 2000) (AAA's Rules applied when the arbitration agreement expressly incorporated them); *McCaskill v. SCI Management Corp.,* 2000 WL 875396, at * 4 (N.D.Ill. June 22, 2000) (recognizing the applicability of the AAA's Rules incorporated in an arbitration agreement); *Brown v. Surety Finance Serv., Inc.,* 2000 WL 528631, at * 3–4 (N.D.Ill. March 24, 2000) (AAA's Rules applicable when the arbitration agreement expressly incorporates them). Although DeGroff claims that she did not have access to the AAA's Rules, the Policy provides that "[c]opies of the AAA rules may be obtained from the Company's Human Resources Department." (Policy at 2.)

ation, we think this suggestion is wrong under Indiana law. *See, e.g., Gibson,* 121 F.3d, at 1131–32 (either an initial offer of employment or a promise to employ an at-will employee can constitute consideration for an employee's promise to arbitrate); *Flynn,* 102 F.Supp.2d at 1060–61 (an employer gives sufficient consideration when it bargains for an employee's promise to arbitrate in exchange for its assent to be bound by the arbitrator's decision); *Kreimer,* 2000 WL 962817, at * 3 (finding adequate consideration when employer agreed to be bound by arbitrator's decision and agreed to pay the expenses and fees for arbitration). Stated simply, a "meaningful link" was established between MascoTech's promises in the Policy and DeGroff's promise to abide by the Policy. *Cf., Gibson,* 121 F.3d at 1131 (consideration did not exist when there was no meaningful link between signed document and manual setting forth the employer's promises); *Penn,* 269 F.3d at 759–60 (no mutuality of obligation where employer required employee to sign an arbitration agreement with the employer's hand-picked arbitrator). Therefore, because DeGroff accepted the benefit of continued employment in exchange for her agreement to arbitrate her claims, adequate consideration exists to enforce the agreement. *Kreimer,* 2000 WL 962817, at *4.

### c. DeGroff Made a Knowing and Voluntary Waiver of any Judicial Forum

■ While DeGroff admits that she signed all three documents, she contends that she did not knowingly and voluntarily waive her right to a judicial forum, citing the district court opinion in *Penn v. Ryan's Family Steakhouses,* 95 F.Supp.2d 940 (N.D.Ind.2000). There, Chief Judge Lee relied on Ninth Circuit cases in holding that an employee cannot knowingly consent to arbitration if the acknowledg-

ment form does not tell him he is waiving a judicial forum. *Id.* at 952–953 (citing *Kummetz v. Tech Mold, Inc.,* 152 F.3d 1153, 1155 (9th Cir.1998); *Nelson v. Cyprus Bagdad Copper Corp.,* 119 F.3d 756, 758 (9th Cir.1997)).

Of course, this approach is now much in doubt after *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 1313, 149 L.Ed.2d 234 (2001), as the Seventh Circuit noted in its disposition of *Penn,* 269 F.3d at 761. *See also Haskins v. Prudential Insurance Co. of Am.,* 230 F.3d 231, 241 (6th Cir.2000) (rejecting the "knowing and voluntary" standard). However, we need not definitively decide the point here, because it is clear from the record that DeGroff actually did give a knowing and voluntary waiver.

DeGroff received and had an opportunity to review both the Policy and a set of explanatory Questions and Answers, and, consequently, had all the information needed to knowingly agree to arbitration. *See, e.g., Kreimer,* 2000 WL 962817, at * 9 (plaintiff knowingly agreed to arbitration when she had a copy of the policy, explanatory questions and answers, and attended an informational meeting). Indeed, the application DeGroff signed states that "[a]s a result [of the Policy], ... Arbitration will be the sole and exclusive remed[y] for any claims covered by the Corporate Dispute Resolution Policy and I agree not to pursue any such claims in Court through a judge or jury." (Employment App.) Moreover, the arbitration Policy explicitly referenced in the employment application covers any "claim under applicable state or federal law [an] ... employee ... might have against the Company including ... all forms of unlawful discrimination." (Policy at 1.) Such a recitation fully alerts anyone that they are waiving a judicial forum. *See Flynn,* 102 F.Supp.2d, at 1059 n. 2 (plaintiff knowingly consented

to arbitration when the agreement specifically outlined the claims to be arbitrated); *cf., Kummetz,* 152 F.3d at 1155 (plaintiff did not voluntarily waive judicial remedies when acknowledgment failed to alert him of an arbitration clause). Consequently, DeGroff made a knowing and voluntary waiver of a judicial forum for her Title VII claims.

## 2. The Contract is not Unconscionable

DeGroff contends that the agreement is allegedly one-sided and hence unconscionable because of the great disparity of bargaining power between the parties and because the circumstances surrounding her signing the documents are suspicious. (*See* Pl.'s Sur–Reply at 5).

■ "A contract is unconscionable when there is a great disparity in bargaining power that leads the weaker party to sign an agreement unwillingly or unaware of its terms, or when an agreement is one that 'no person not under delusion, duress or in distress would make,' or one that 'no honest and fair [person] would accept.'" *Flynn,* 102 F.Supp.2d at 1062 (quoting *Houin v. Bremen State Bank,* 495 N.E.2d 753, 758 (Ind.Ct.App.1986)). Consequently, a contract is not unenforceable merely because one party has some sort of advantage. *Flynn,* 102 F.Supp.2d at 1062.

■ While there may be some disparity in bargaining power in this case, there is no evidence to suggest that it was so great as to require a finding of unconscionability. As discussed in detail *supra,* DeGroff was first made aware of the Policy when she signed the application nearly three months before she was hired by MascoTech. While waiting for MascoTech to make its hiring decision, DeGroff actually worked there through a temporary agency, and presumably was no stranger to MascoTech or its policies. When DeGroff was finally hired, she signed addi-

tional documentation indicating receipt of the Policy along with the explanatory questions and answers. Given the distribution of the Policy, the question and answer section supplied with the Policy, and its straightforward language, DeGroff was certainly in a position to understand the Policy and its significance to her continued employment. *See, e.g., Kreimer,* 2000 WL 962817, at * 5 (finding no unconscionability in enforcing policy when it was distributed with a question and answer section and there was an informational meeting).

Furthermore, even if we assume that DeGroff felt some pressure to quickly sign the acknowledgment form and the employment letter, there is no evidence that she would not have signed them otherwise. After all, DeGroff unhesitatingly signed the original employment application, which acknowledged an opportunity to review the Policy, with no seeming pressure at all, and there is simply no basis to conclude that she would not have likewise signed the latter two documents, so we do not believe there is any basis to find unconscionability. *See, e.g., Flynn,* 102 F.Supp.2d at 1062–63 (contract not unconscionable when plaintiff failed to suggest that he would not have signed the agreement absent pressure from the defendant); *cf., Geiger,* 134 F.Supp.2d at 997 (agreement unconscionable when evidence showed that plaintiff would not have signed agreement absent pressure from the defendant).

## 3. The Policy Adequately Protects De-Groff's Title VII Substantive Rights

DeGroff also contends that the agreement is unenforceable because it fails to protect her substantive rights under Title VII. Agreements that require arbitration of statutory claims, including discrimination and retaliation claims under Title VII, are generally enforceable under the FAA.

*Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647; *Koveleskie,* 167 F.3d at 362. Nevertheless, while the Seventh Circuit has not squarely addressed the issue, other circuits have held that arbitration agreements that require a forfeiture of statutory rights are unenforceable. *See, e.g., Shankle v. B–G Maint. Mgmt. of Colorado, Inc.,* 163 F.3d 1230, 1234 (10th Cir.1999); *Paladino v. Avnet Computer Tech.,* 134 F.3d 1054, 1060 (11th Cir.1998); *Graham Oil Co. v. ARCO Products Co.,* 43 F.3d 1244, 1248–49 (9th Cir.1994); *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465 (D.C.Cir.1997); *Perez v. Globe Sec. Servs.,* 253 F.3d 1280 (11th Cir.2001).

On the other hand, an agreement to arbitrate is enforceable so long as a party may still effectively vindicate her statutory rights. *McCaskill,* 2000 WL 875396, at *3. This brings us to DeGroff's contention that the agreement should not be enforced because it does not permit her to fully vindicate her statutory rights in a number of ways. We will address each contention seriatim.

### a. Location of Arbitration

■ DeGroff contends that the Agreement should be deemed unenforceable because it fails to either specify a location for arbitration, or ensure that arbitration will take place in a location convenient to her. However, DeGroff offers no authority mandating such a provision. The closest she comes to the point is this Court's resolution of *Penn,* where those same arguments were made. However, in *Penn,* Chief Judge Lee concluded that since under the terms of that agreement the arbitration panel would be biased, it naturally followed that their selection of the time and place of arbitration would also not be even-handed. *Penn,* 95 F.Supp.2d at 948.

Here, however, the Policy specifically requires that "[t]he Arbitrator will be independent and impartial and no person shall serve as an Arbitrator who has any financial personal interest in the result of the proceeding." (*See* Policy at 3.) Moreover, the Policy incorporates the AAA's Rules, one of which provides:

> The parties may designate the location of the arbitration by mutual agreement. In the absence of such agreement before the appointment of the arbitrator, any party may request a specific hearing location by notifying the AAA in writing and simultaneously mailing a copy of the request to the other party(s). If the AAA receives no objection within ten (10) days of the date of the request, the hearing shall be held at the requested location. If a timely objection is filed with the AAA, the AAA shall have the power to determine the location and its decision shall be final and binding. After the appointment of the arbitrator, the arbitrator shall resolve all disputes regarding the locations of the hearing.

*See* American Arbitration Association, Rule 9, *National Rules for the Resolution of Employment Disputes (including Arbitration and Mediation Rules),* at 14 (1997) (hereafter "AAA Rule ——"). Consequently, since the proposed arbitration here will be unbiased, the location selection procedure incorporated into the agreement assures that DeGroff's rights will be protected. Therefore, the agreement's failure to state the location for arbitration (a reasonable omission given incorporation of the AAA's Rules) is not a bar to enforcement.

### b. Discovery

■ DeGroff objects to the Policy because it limits discovery to one deposition and those documents which are "clearly relevant and material to the dispute and for which the party has a substantial, demonstrable need." (Policy at 3.) DeGroff

again cites to *Penn* in support of her argument, a case where this Court held that one deposition was insufficient discovery. *See Penn,* 95 F.Supp.2d at 948. However, the Court in *Penn* found such limited discovery insufficient because the discovery provisions were "dependent on the good graces of an arbitration panel stacked against the employee," such that limited discovery could not constitute a "fair trade-off for the 'simplicity, informality, and expedition' noted in *Gilmer.*" *Penn,* 95 F.Supp.2d at 948 (citing *Gilmer,* 500 U.S. at 31, 111 S.Ct. 1647). In contradistinction, DeGroff is assured of an unbiased arbitrator here, (*see* Policy at 3), so the reasoning in *Penn* does not so neatly apply.

Moreover, there has been no showing that such a limitation on discovery would thwart DeGroff's ability to present her claim. *See Gilmer,* 500 U.S. at 31, 111 S.Ct. 1647. Indeed, while the Policy limits the number of depositions, it also permits broad document disclosure. Furthermore, the AAA's Rules incorporated into the Policy clearly provide that the arbitrator "shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." *See* AAA Rule 7, at 13. Thus, while discovery might not be as expansive as is typically found in the federal courts, by agreeing to arbitrate, DeGroff traded federal court procedures for the "simplicity, informality, and expedition of arbitration." *Gilmer,* 500 U.S. at 31, 111 S.Ct. 1647 (internal quotations omitted). However, by opting for arbitration,

DeGroff did not adopt a process, at least the process set out here, that is fatally or unfairly flawed. Therefore, DeGroff's objection to the arbitration agreement based on limited discovery fails.

#### c. Initiating Arbitration

■■■ DeGroff also objects because the Policy fails to instruct employees how to initiate arbitration. However, the AAA's Rules provide detailed and specific instructions on the procedure. *See* AAA Rule 4, at 10–12. Having previously determined that the Policy expressly incorporates the AAA's rules, this argument is unavailing.

#### d. Time Limits

■■■ DeGroff also claims that the Policy should not be enforced because the time limits contravene federal and state statutes of limitations. Under the Policy,

> employees must initiate arbitration within one year of the time the claim accrued or, in the case of a claimed statutory violation, the time limits imposed by the applicable statute of limitations, whichever is longer. The failure to initiate arbitration within this time limit will forever bar any claim involving that dispute.

(Policy at 2). The Court fails to understand how this Policy contravenes any federal or state statutes of limitations; indeed, the provision expressly provides that the one year limitation yields to any applicable statute of limitations that is longer. In other words, the time limit for DeGroff to initiate arbitration under the Policy is at least as long as that afforded under Title VII. Thus, this provision does not violate DeGroff's substantive rights either.[12]

---

12. While DeGroff cites to *Johnson v. Hubbard Broadcasting, Inc.,* 940 F.Supp. 1447 (D.Minn.1996) for support, the time limitation in the arbitration agreement there was short-

er than the applicable statute of limitations. *See Johnson,* 940 F.Supp. at 1460–61. Moreover, the court there did not actually decide whether the agreement contravened any stat-

Finally, while the parties seem to dispute when the applicable statute of limitation will actually run, (*compare* Def. Reply at 7 *with* Pl. Sur Reply at 3), it is up to the arbitrator to decide the meaning of the arbitration agreement, and whether De-Groff is now barred from taking her claim to arbitration. *Johnson,* 940 F.Supp. at 1461.

### e. Attorney's Fees

██ DeGroff also contends that the arbitration agreement should be invalidated because by foreclosing attorney's fees it fails to protect her substantive rights under Title VII. However, as the Defendants properly point out, the arbitration agreement at issue here does not expressly preclude fees. Indeed, while the Agreement states that the expenses of attorney representation shall be "the sole responsibility of the employee," (Policy at 2), it also allows an arbitrator to "grant monetary damages or such other relief as may be in conformance with applicable principles of common, decisional, and statutory law in the relevant jurisdiction." (Policy at 4.) More importantly, by expressly incorporating the AAA's Rules (*see* Policy at 2), the Agreement grants the arbitrator the "authority to provide for the reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law." AAA Rule 32(d), at 24–25.[13] Furthermore, MascoTech concedes that "reasonable attorneys' fees are an element of recovery by a prevailing

party under the Policy." (Def. reply br. at 9).

This situation is strikingly similar to *McCaskill* and *Witz,* two cases from the Northern District of Illinois where it was determined that neither of the two arbitration agreements at issue amounted to a forfeiture of the Plaintiff's statutory rights given that the arbitrator was authorized to award attorney's fees. *McCaskill,* 2000 WL 875396, at * 6 (arbitration agreement which required each party to pay their own attorney' fees and incorporated AAA provisions did not require forfeiture of statutory rights); *Witz,* 2000 WL 1720434, at *3 (agreement was enforceable when AAA provisions gave the arbitrator the authority to award some relief available in court). Like *McCaskill* and *Witz,* we find this provision does not invalidate the arbitration agreement.

Therefore, given the strong federal policy favoring enforcement of arbitration agreements, *see Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647; *Kreimer,* 2000 WL 962817, at *5, the AAA's express allowance for attorney's fees, and MascoTech's representation that DeGroff may collect attorney's fees if she prevails, it is clear that the Agreement is not unenforceable simply because it initially requires DeGroff to pay her own fees.[14] *See, e.g., Johnson v. Hubbard Broadcasting, Inc.,* 940 F.Supp. 1447, 1462 (D.Minn.1996) (holding that arbitrator must determine whether the terms of the arbitration agreement allow for attorney's fees).

---

utes of limitations; instead, the court postponed any ruling until after the arbitrator interpreted the agreement.

**13.** AAA Rule 32(d) has been superceded by AAA Rule 34(e). *See* AAA Rule 34(e), *available at* 1998 WL 1527109, *12–13. However, because the Policy expressly incorporated the 1997 version of the AAA's Rules, we cite to those now outdated rules.

**14.** Of course, any arbitral award is subject to judicial review to ensure that the arbitrator complied with statutory requirements, *see McCaskill,* 2000 WL 875396, at * 6; *Witz,* 2000 WL 1720434, at * 3; *Johnson,* 940 F.Supp. at 1462.

### f. The Administrative Costs of Mediation and Arbitration

█ Nevertheless, DeGroff contends that the agreement to split the administrative costs for mediation and arbitration impinges on her statutory rights under Title VII. Indeed, the Supreme Court, in *Green Tree Financial*, stated "[i]t may well be that the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000). To bolster this claim, DeGroff argues that this case is similar to *Perez v. Globe Airport Security Services*, in which the Eleventh Circuit found an arbitration agreement unenforceable because it explicitly required the employer and employee to equally split the arbitrator's fees and the administrative costs.[15] *Perez v. Globe Airport Sec. Servs.*, 253 F.3d 1280, 1285–86 (11th Cir.2001).

More particularly, the *Perez* arbitration agreement provided that " '[despite any rule to the contrary,] all costs of the [AAA] ... will be shared equally between [the employee] and the Company.' " *Id.* at 1285 (quoting the arbitration agreement). Additionally, although the AAA's Rules allow the arbitrator to assess fees and costs, the arbitration agreement in *Perez* did not in-

corporate these rules. *Id.* at 1286. Therefore, the Eleventh Circuit found the agreement in *Perez* impermissibly circumscribed the arbitrator's authority to grant effective relief because it precluded a complete award of fees and costs as permitted under Title VII. *Id.*

In contrast, the arbitration agreement here is not nearly so limiting. Indeed, the Policy explicitly provides:

> [MascoTech] will ... pay ninety percent of the AAA's mediation administrative fees, the employee will pay ten percent.... [MascoTech] will also pay seventy-five percent of the AAA's arbitration administrative fees, the employee will pay twenty-five percent.

(Policy at 2.) Unlike *Perez*, under MascoTech's Policy, it shoulders a substantial majority of the administrative costs for either arbitration or mediation.[16] Conversely, DeGroff is only required to pay a modest amount of the entire administrative cost of submitting her claim to mediation and arbitration.[17] Although DeGroff argues that if she prevails these expenses should all shift to MascoTech, the total administrative fees DeGroff must actually pay under the agreement are not an unreasonable expense. *See Cole v. Burns Int.'l Sec. Servs.*, 105 F.3d 1465, 1484 (D.C.Cir.1997) ("[A]ny reasonable [admin-

---

**15.** One major difference between this case and *Perez* is that DeGroff does not appear to contend that provision for paying the mediator or arbitrator impinges on her Title VII rights. Indeed, while some courts have found arbitration agreements unenforceable if they require the splitting of arbitrator's fees, *see Cole v. Burns Int.'l Sec. Servs.*, 105 F.3d 1465, 1484–85 (D.C.Cir.1997); *Shankle v. B–G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1235 (10th Cir.1999), DeGroff's agreement provides that "[MascoTech] *will pay all* of the expenses and fees of the Mediator ... [and] Arbitrator." (Policy at 2) (emphasis added).

**16.** The mediation administrative fees include a filing fee of $150.00 per party. AAA Rules, at 36. Arbitration filing fees under the AAA include a filing fee of $500.00, administrative fees of $150.00 per day, plus various fees for room rental and a court reporter. *See* AAA Rules, at 29; *Cole*, 105 F.3d at 1484 n. 12.

**17.** The combined filing fees DeGroff would pay for both mediation (ten (10) percent of $150, or $15) and arbitration (twenty-five (25) percent of $500, or $120) actually total less ($135) than the $150 filing fee she paid to bring this suit.

istrative expenses] that accompany arbitration are not problematic.").

Additionally, unlike *Perez*, the policy here expressly incorporated the AAA's Rules, thus DeGroff could request the arbitrator reduce or defer her administrative fees based on undue hardship. *See* AAA Rule 36, at 26–27 (stating "AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees.");[18] *Cole*, 105 F.3d at 1484 n. 12. Finally, should DeGroff appeal any arbitration award, the reviewing court could assess whether unreasonable arbitration fees were imposed. *See Koveleskie*, 167 F.3d at 366; *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 16 (1st Cir.1999).

Therefore, the arbitration agreement is not rendered unenforceable by the administrative fee splitting provision.

In sum, DeGroff has failed to show that either the agreement or MascoTech's Policy violates her substantive rights under Title VII.

### B. MascoTech did not Waive its Right to Demand Arbitration

■ DeGroff's final argument is that MascoTech waived its right to enforce the arbitration agreement by participating in the EEOC's conciliation efforts instead of initiating mediation, a condition precedent to arbitration.

To determine whether waiver has occurred, we must examine whether "based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648, 650–651 (7th Cir.2000) (quoting *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Products*

*Co.*, 969 F.2d 585, 588 (7th Cir.1992)); *see also Iowa Grain Co. v. Brown*, 171 F.3d 504, 510 (7th Cir.1999) (holding that courts must look at the totality of the circumstances to find waiver). In light of the strong federal policy favoring arbitration, parties asserting waiver bear a "heavy burden" and courts should not "lightly infer" waiver. *St. Mary's Med. Ctr. of Evansville, Inc.*, 969 F.2d at 590; *see also, Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 641 (7th Cir.1981); *Midwest Window Sys., Inc. v. Amcor Indus., Inc.*, 630 F.2d 535, 536 (7th Cir.1980). Moreover, DeGroff, as the party asserting waiver, must show that the inconsistent actions were prejudicial. *St. Mary's Med. Ctr. of Evansville, Inc.*, 969 F.2d at 590.

Here, we will assume that mediation is a condition precedent to arbitration, and one that both parties have a duty to fulfill. However, MascoTech did not initiate mediation during the EEOC investigation, and did not even raise the arbitration agreement until DeGroff filed suit in federal court. Thus, the central question is whether MascoTech waited too long to insist upon arbitration; or stated another way, when did MascoTech's duty to initiate arbitration arise? Of course, DeGroff contends that the duty arose when she filed the EEOC charge. Under the Policy, we come to a different conclusion.

First, the Policy provides, "[i]f a dispute arises between the Company and an employee which cannot be resolved through the Company's Open Door Policy, ... the Company and the employee must first attempt to resolve the dispute through mediation by the AAA." (Policy at 2.) Further, "[i]f the dispute is not resolved through mediation, the dispute shall be resolved by exclusive, final and binding arbitration,"

---

**18.** Although AAA Rule 36 has been superceded by AAA Rule 38, the text of the rule is largely unchanged. AAA Rule 38, *available at* 1998 WL 1527109, *14.

which the employee must initiate. (Policy at 2.) The "Questions and Answers" elaborate on that point:

Will I still be able to go the [EEOC] or any other state or federal agency to complain about a problem?

Yes. The Corporate Dispute Resolution Policy applies only to relief you might seek personally through the courts for a dispute. You are still free to consult with and file charges with the [EEOC].

\* \* \* \* \* \*

How soon must arbitration be requested?

... Employees should, as soon as possible, attempt to resolve disputes informally through normal Human Resource channels and the Open Door Policy. If the matter cannot be resolved the employee may then request mediation under the Corporate Dispute Resolution Policy. If the matter is still unresolved, and the employee desires to pursue arbitration, the employee must request arbitration within one year of the time the claim accrued, unless a statutory right is involved.

(Questions and Answers at 8).

Thus, by its very terms, the Policy only applies if relief is sought through the courts, and clearly contemplates that an employee will still file charges with the EEOC.[19] (*See* Questions and Answers at 8.) Thus, DeGroff's mere filing of a charge with the EEOC did not create at that point a duty on the part of MascoTech to initiate mediation. More importantly, MascoTech's participation in the EEOC's concili-

ation efforts was certainly not inconsistent with its right to arbitrate. *See, e.g., Dickinson*, 661 F.2d at 641 ("Preliminary negotiations concerning a settlement are not sufficient to waive arbitration.").

■ Moreover, a delay in instituting arbitration as a result of participation in EEOC proceedings is insufficient to constitute waiver. *See, e.g., DiCrisci v. Lyndon Guaranty Bank of New York*, 807 F.Supp. 947, 954 (W.D.N.Y.1992) ("Mere participation in an action does not constitute a waiver of arbitration when an assertion of the right to arbitrate is made in a timely manner."); *see also, Brown v. ITT Consumer Financial Corp.*, 211 F.3d 1217, 1223 (11th Cir.2000) (defendant was under no obligation to make a pre-suit demand for arbitration).

In sum, MascoTech had no duty to initiate mediation/arbitration until DeGroff filed her lawsuit. Since MascoTech filed their motion to compel arbitration a mere two months after this lawsuit was filed and before submitting any answer, we find that there has been no delay, and thus no waiver. *See, e.g., Dickinson*, 661 F.2d at 641 (eighteen month delay that occurred while attempting to settle dispute does not work as a waiver to arbitration). Therefore, we find that the arbitration agreement should be enforced.

## IV. CONCLUSION

Therefore, for the foregoing reasons, the Defendant's motion to dismiss and to compel arbitration (which has been converted to a motion for summary judgment) is hereby GRANTED.[20] This action is dis-

---

**19.** The inclusion of this provision was likely the result of the Supreme Court's holding that individuals "subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action." *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647.

**20.** Here, the Defendant originally sought to dismiss this action and to compel compliance with the Policy. (*See* Def.'s M. to Dismiss). Under the FAA, federal courts can simply stay actions as opposed to dismissing them. *See* 9 U.S.C. § 3. However, in cases such as we have here where all the issues raised in the district court must be submitted to arbitra-

missed and the parties are ordered to undertake compliance with MascoTech's Corporate Dispute Resolution Policy.

tion, the clear weight of authority supports dismissal of the case. *See Lopez v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 1997 WL 674965, *2 (N.D.Ill. Oct. 28, 1997) (quoting *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) (collecting cases)).